## Eves v. Tritch et ux., Appellants.

Argued March 8, 1948. Before RHODES, P. J., HIRT, DITHRICH, ROSS, ARNOLD and FINE, JJ. (RENO, J., absent).

*George Kunkel,* for appellants.

*Thomas Caldwell,* with him *Harold V. McNair* and *Caldwell, Fox & Stoner,* for appellee.

OPINION BY DITHRICH, J., April 13, 1948:

The parties to this action of ejectment own and reside in adjoining tracts in the Borough of Middletown, Dauphin County. The action involves the location of the dividing line between the rear of the properties. Plaintiff claims that the southern extremity of the line was located at a point five feet east of the point called for in the respective deeds. The northern extremity of the line is not in dispute.

Until 1942 a board fence separated the properties. The fence was there in 1911 when defendants moved into the premises they now occupy; it was admittedly there at least five years, and probably ten years, before that. During all of that period plaintiff lived in the premises she now occupies and owns. It thus appears that both parties had acquired title by adverse possession for more than twenty-one years up to the fence on their respective sides.

A year after the board fence was torn down, a wire fence was erected by the defendants. They contend it was erected on the same line as the board fence. Plaintiff contends that it was not, her contention being that the wire fence starts at a point at the southern end of her lot, which gives her five feet less land at that point than she occupied when the board fence was the dividing line. She claims that the line of the fence passed entirely to

the rear, or easterly side, of her house. Defendants claim that the fence went against the plaintiff's house about eighteen inches from the rear of the house, so that the line of the fence extended cut through plaintiff's house almost parallel to the rear line of the house. At the southeastern corner, or the southerly rear corner, of plaintiff's house, there was a small offset or alcove about seven feet by five feet, so that there were in fact two south rear corners, one being about five feet to the south and about seven feet to the west of the other.

The offset in plaintiff's house is shown on the blueprints or plans of the respective properties. In addition to the plans there were admitted in evidence, without objection, two photographs showing the board fence running along the rear of plaintiff's house. The photographs were taken from a point south of plaintiff's house and they viewed the southeastern portion of the house in a northeasterly direction. They, however, showed only one corner of the southeastern portion of the plaintiff's house, and that is the corner farthest from the fence.

Appellants now contend that, since the photographs presented an untrue picture, the omission of the offset or alcove from the photographs should have been noted and understood by counsel, court and jury at the outset of the trial and when the photographs were first offered in evidence.

But the discrepancy between the blueprints or plans and the photographs, if it may be said to be a discrepancy, was brought to the attention of the jury by the trial judge sua sponte. In his charge he said, in part: "The one question that you might have to consider that hasn't been contended for or raised, as I recall it, in the arguments, or in connection with these pictures, except maybe in one reference by one witness, is whether that point there is the back corner of that house. These maps show an offset in that house back here, and you will have to determine whether that is that corner, or that corner back there (Indicating to the Jury from the exhibit).

. . . Now if you find by those pictures that that is not the corner of the house, the rear corner of the house,— in other words, that corner of the Eves house which is nearest the Tritch house—then you may not place the weight on these pictures which would otherwise be placed on them. . . . Of course, what weight you put on them is for you. If that is not the very back of the Eves house, then, as I said, you probably will not put the weight on these pictures that you would if that corner is the back. However, even though you may find that that is not the back corner of the house you may still make some deductions from the picture, and you can still use them. They show that the fence was there, and the position of the tree."

And before concluding his charge, the trial judge again referred to the photographs in the following manner: "As I recall it, we have no testimony before you which would indicate definitely whether this side of the Eves house—and by this side I mean the side toward the Gaster property—is the same today, or when the plan was made, as it was when the two pictures known as Plaintiff's Exhibits 2 and 3 were taken. On the plan there is shown to the rear of the Eves house one corner toward the Gaster property which is not as far back as another corner. In other words, you might say that there were two rear corners to the Eves house as shown on this plan. Now, I think there was no testimony from which we can determine whether this plan, showing the house at the time the plan was made, shows the house in the same position and without additions as it was at the time these pictures were taken. There was testimony, as I recall it, by Miss Eves and her witnesses, or at least some of them, that this point was the rear wall of the house (indicating from exhibit), and as I recall it at least one of the witnesses of the defendants agreed that that was the rear wall of the house. And if that was the rear wall of the house at that point, then you can look at the pictures and see for yourself from the pictures

whether at the time they were taken the fence went back of the house. If it was not the rear wall of the house, then I do not know whether you will be able to determine from the pictures whether the fence went back of the house or whether it did not. You determine where the fence was. If you find that the fence was on the line contended for by Miss Eves—by the fence I mean the fence that was torn down in 1942—if you determine that that fence was on the line contended for by Miss Eves, then you give your verdict for her. If you find that it was on the line on which the present fence is, which is the line contended for by the Tritches, then you give your verdict for the defendants."

In the light of the court's charge, we are of opinion that the jury could not have been misled by the admission into evidence of the photographs which admittedly showed that the board fence passed to the rear of plaintiff's house. Whether or not it passed to the rear of the house for its entire length could not, of course, be determined from the photographs alone, nor was it contended that it could. There was sufficient other competent testimony to prove that point. Furthermore, it was specifically called to the attention of the jury that the rear corner shown on the photographs might or might not be the rear corner nearest the Tritch property.

In any event, the admissibility of photographs is largely within the discretion of the trial judge, and a new trial will not be granted unless there has been a manifest abuse of discretion. *Lutz v. Allegheny County,* 327 Pa. 587, 195 A. 1; *Beardslee v. Columbia Township,* 188 Pa. 496, 41 A. 617; *Thompson v. American Steel & Wire Co.,* 317 Pa. 7, 175 A. 541. No abuse appears here.

Judgment affirmed.