542 A.2d 525

**John BERMAN, Appellee,**

**v.**

**RADNOR ROLLS, INC., Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 29, 1987.

Filed April 20, 1988.

Reargument Denied June 6, 1988.

120

122

Audrey L. Jacobsen, Philadelphia, for appellant.

Mark C. Schultz, Norristown, for appellee.

Before CAVANAUGH, BECK and HESTER, JJ.

BECK, Judge:

Plaintiff/appellee John Berman sued defendant/appellant Radnor Rolls, Inc. for personal injuries he sustained while skating at appellant's rink. The jury returned a verdict in favor of plaintiff Berman in the sum of $463,000 but found only 60% of the causal negligence attributable to defendant Radnor Rolls. The trial court molded the verdict by reducing it to $277,800 in accordance with the jury's finding that Berman was 40% contributorily negligent, and assessed delay damages in the amount of $76,395 for a total verdict of $354,195. Appellant Radnor Rolls filed motions for post-trial relief, which were dismissed by the court. This timely appeal followed.

The relevant facts in this case are as follows. On March 26, 1981, John Berman accompanied a group of friends to the Radnor Rolls skating rink. Berman testified that before this occasion he had roller-skated only one other time. Upon arriving at the rink, he rented skates and began skating away from the main rink in an area which was identified as a beginners' area. Berman testified that he skated in the beginners' area for approximately ten to fifteen minutes and then began skating on the main rink. After he had skated around the rink several times, he was bumped by another skater and lost his balance. As a result of losing his balance, Berman was unable to make the turn necessary to remain on the rink. Instead, while trying to regain his balance, he skated through a sixty feet wide opening in the railing which surrounds the rink and went onto a carpeted area adjoining the rink. The opening in the railing through which Berman skated is intended for use by skaters as an entrance to and exit from the rink surface. Berman stated that once he had left the rink surface and was on the adjoining carpeted area, he regained his balance but continued moving at a "reasonable speed." Berman testified that as he moved away from the rink, the floor dropped approximately six inches to a lower level (hereinafter referred to as the drop-off) and he again lost his balance and began heading in the direction of the vending

machine area, located approximately fifty feet from the skating area. Berman testified that he regained his balance again and intended to reach out for a vending machine in order to stop himself. However, as he reached for one of the machines, Berman struck his head against a cabinet or shelf which protruded beyond the machines and upon which rested a microwave oven. Berman's head was cut, causing him to bleed, but he was not hospitalized nor did he seek any immediate medical attention.

The next day, Berman's family went to his brother's house for dinner, but Berman, feeling ill, did not accompany them. When the family returned from the dinner, they found Berman on all fours on the floor of his bedroom. Berman's father testified that his son was crawling around the floor making grunting noises and saying only that he couldn't see and thought he was blind. Berman was taken to Lankenau Hospital. His father testified that when he and Berman's mother were permitted to see him, Berman merely stared into space and did not respond when spoken to. Berman's condition improved the following day, but he remained in the hospital for four days before being released. Berman's difficulties continued even after leaving the hospital. Berman's family testified that he had difficulty understanding or recalling things that were said to him. Berman's brother, who owned a landscaping business where Berman had been employed as a laborer, stated that before his head injury Berman had been a reliable worker. Following the accident, Berman developed a weakness on one side of his body and could no longer perform his work. His brother then switched Berman to sales. Berman proved to be extremely unreliable and failed repeatedly to keep appointments with prospective customers. At trial, Berman's expert witnesses testified that he was suffering from mild organic brain dysfunction, with the result that he had and would continue to have problems with memory and learning.

Appellant Radnor Rolls raises five contentions of error, which we consider seriatim. We find that the trial court

committed no error, and affirm the judgment entered below.

## I. JUDGMENT N.O.V.

■ Appellant first claims that the trial court erred in refusing to grant its motion for judgment n.o.v. On appeal, we will reverse the trial court's denial of judgment n.o.v. if we find an abuse of discretion or an error of law which controlled the outcome of the case. *Timbrook v. Foremost Ins. Co.*, 324 Pa.Super. 384, 471 A.2d 891 (1984). We consider the evidence and all reasonable inferences that may be drawn therefrom in the light most favorable to the verdict winner. *Northwest Savings Assoc. v. Distler*, 354 Pa.Super. 187, 511 A.2d 824 (1986).

Appellant presents three arguments in favor of its request for judgment n.o.v. The first two relate to appellant's contention that it owed no duty to appellee and the third relates to appellant's contention that appellee failed to show causation. First, appellant argues that the aspects of the rink's design that appellee alleges were defective and caused his accident—the six-inch drop-off between the carpeted area adjacent to the skating floor and the lower level of the rink concourse, the sixty feet wide opening in the rink railing, and the layout of the vending machine area— were "known" or "obvious" hazards against which a landowner has no duty to protect his business invitees. In making this "no duty" claim, appellant asserts that rollerskating is one of those activities so generally known to be dangerous that the owner of the premises in which the activity occurs is considered to owe no duty to protect the participant from its hazards. Thus, appellant argues that it is clear as a matter of law that appellee failed to establish a prima facie case against appellant because he failed to establish the existence of a duty and that judgment n.o.v. in appellant's favor is, therefore, appropriate. This argument centers on one form or corollary of the principle of assumption of risk. *See Carrender v. Fitterer*, 503 Pa. 178, 469 A.2d 120 (1983).

Appellant also argues that judgment n.o.v. is appropriate because it is clear as a matter of law that appellee failed to establish the existence of a duty on the part of appellant because this type of accident was unforeseeable.

Lastly, appellant asserts appellee failed to establish the additional necessary element of proximate (or legal) causation.

■ We will consider the substance of only one of these arguments in support of the entry of judgment n.o.v., i.e., that which goes to causation, because we conclude that appellant has waived its arguments that appellee failed as a matter of law to establish the element of duty.

The source of appellant's waiver of its duty theories is found both in its conduct at trial and in its post-trial motions and brief in support thereof. During trial, appellant did not proceed on the theory that it was entitled to judgment as a matter of law on any assumption of the risk or duty theory. For example, appellant moved for a directed verdict on only one theory. It sought a directed verdict on the ground that appellee had failed to submit sufficient evidence of proximate causation to warrant submission of the case to the jury. Appellant did not move for either a compulsory nonsuit or directed verdict on the ground that appellee had failed to establish the existence of a duty.

Of even greater significance is the fact that nowhere in appellant's post-trial motions or supporting brief is there any reference to the theory that appellant did not owe a duty to appellee because of the unforeseeability of this type of accident and that appellant was thus entitled to judgment n.o.v. on that ground.

Moreover, although appellant's post-trial motions do allege error in the trial court's refusal to charge the jury on its assumption of risk theories, nowhere does appellant argue that the trial court should have decided as a matter of law that appellant had no duty under an assumption of the risk analysis, thus entitling it to judgment n.o.v. on that ground. Appellant's sole argument was that the issue of

assumption of risk should have been submitted to the jury. If that indeed was error on the part of the trial court, which we find it was not, appellant would be entitled only to a new trial which included a charge on the assumption of risk theory. It would not be entitled to judgment n.o.v.

In this regard, we find a close analogy between this case and the case of *Scarborough by Scarborough v. Lewis*, 359 Pa.Super. 57, 518 A.2d 563 (1986). In *Scarborough*, one of the appellants attempted to argue on appeal that the trial court had erred in refusing the entry of judgment n.o.v. on the same two grounds asserted in the instant case, i.e., appellees' failure to establish a prima facie case of negligence by failing to show both the existence of a duty and of proximate causation. The court refused to consider whether the element of duty had been shown because appellant failed to present argument in its post-trial brief on this issue. *Id.*, 359 Pa.Superior Ct. at 62–63, 518 A.2d at 566. In so deciding, the court provided the following authorities, which will also suffice to support our conclusion in the case *sub judice:*

> See generally *Dilliplaine v. Lehigh Valley Trust Company*, 457 Pa. 255, 322 A.2d 114 (1974); *Tagnani v. Lew*, 493 Pa. 371, 426 A.2d 595 (1981); *see also Commonwealth v. Dessus*, 262 Pa.Super. 443, 396 A.2d 1254 (1978) (issue abandoned when not briefed for lower court but raised on appeal as an afterthought); *Schneider v. Albert Einstein Medical Center*, 257 Pa.Super. 348, 390 A.2d 1271 (1978) (issue waived when raised in post-trial motions but not briefed or argued before trial court); *Commonwealth v. Prisznyak*, 306 Pa.Super. 137, 452 A.2d 253 (1982) (failure to brief or argue issues raised in post-verdict motions results in waiver of issues on appeal); *Equipment Finance v. Toth*, 328 Pa.Super. 351, 476 A.2d 1366 (1984) (failure to argue or brief issues raised in post-trial motions results in waiver of issues and would not form basis of appeal to reviewing court); *Bell v. City of Philadelphia*, 341 Pa.Super. 534, 491 A.2d 1386 (1985) (issue not argued in brief filed in trial court was not preserved for appellate review); *Cherry v. Willer*,

317 Pa.Super. 58, 463 A.2d 1082 (1983); *Richardson v. LaBuz*, 81 Pa.Cmwlth. 436, 474 A.2d 1181 (1984).

*Id.* at n. 3. *See also Bryant v. Girard Bank*, 358 Pa.Super. 335, 517 A.2d 968 (1986) (failure to raise in post-trial motions and/or brief in support thereof grounds for judgment n.o.v. results in waiver of those issues on appeal).

We further note, as did the *Scarborough* court, that the trial court opinion does not address either of the arguments appellant now raises in support of entry of judgment n.o.v. based on a failure to establish the duty element. As the *Scarborough* court also found, we conclude that this resulted from appellant's failure to raise these contentions to the trial court, thus depriving the trial court of the opportunity to consider them and depriving us of the trial court's analysis thereof. *Id.*

Appellant's properly preserved argument in support of entry of judgment n.o.v. rests on the contention that appellee failed to establish that his injuries were proximately or legally caused by any dereliction by appellant. The gravamen of appellant's argument is that since appellee testified that he regained his balance after having confronted both the rink exit and the six-inch drop-off but continued to skate toward the vending machine area, intending to stop himself there, none of the alleged defects in the construction of appellant's property caused appellee's injuries. Rather, appellant argues that appellee's own conduct in continuing to skate toward the vending area was the legal cause of his injuries.

In considering this argument, we are mindful not only of our limited standard of review set forth above, but also that the issue of proximate causation "is normally a question of fact for the jury; the question is to be removed from the jury's consideration only where it is clear that reasonable minds could not differ on the issue." *Hamil v. Bashline*, 481 Pa. 256, 266, 392 A.2d 1280, 1285 (1978); *Anderson v. Bushong Pontiac Company, Inc.*, 404 Pa. 382, 171 A.2d 771 (1961).

■ We conclude that this is not one of those exceptional cases wherein the jury should have been deprived of its opportunity to determine the question of proximate causation. The expert testimony produced at trial on behalf of appellee clearly supported the jury's ultimate determination that appellee's injuries were proximately caused by the overall defective design of appellant's facility, including the design of the vending area where appellee was actually injured. Contrary to appellant's assertion, this was not a case where a directed verdict on the ground of lack of evidence of causation was warranted simply because appellee testified that he had regained his balance after confronting some of the obstacles presented by the design of appellant's rink. In fact, the evidence produced by expert testimony was sufficient to raise the issue of whether despite appellee's regaining his balance and continuing his movement, the vending area was defectively designed and that design was a substantial factor in causing appellee's injuries. We note that the jury here fully considered the extent to which appellee himself was causally negligent, pursuant to a proper comparative negligence instruction by the trial court, and allocated forty percent of the causal responsibility to appellee. This we find to be a reasonable result, clearly supported by competent evidence of record. Appellant is not entitled to entry of judgment n.o.v. on this ground.

## II. NEW TRIAL

Appellant also alleges several grounds in support of its request for a new trial. They are, summarily stated, that the trial court committed reversible error in refusing to charge the jury on the doctrine of assumption of risk, in delivering a flawed proximate causation instruction, and in admitting photographic evidence of the design of another skating rink.

### 1. *Assumption of the Risk Points for Charge*

Appellant submitted points for charge, all of which were refused by the trial court, outlining two basic and distinct

theories of assumption of risk. The first is that which we have set forth above in our discussion of appellant's request for judgment n.o.v., which centers on the limitations on a possessor of land's duty to protect business invitees.[1] The limitation on which appellant relies relieves a possessor of land of any duty to protect an invitee against "known" or "obvious" hazards existing on the land. *Carrender v. Fitterer, supra.* As we have stated above, appellant argues that all of the characteristics of appellant's premises that appellee alleges to have been defective and the cause of his injuries were known by or obvious to appellee and that, therefore, appellant had no duty to protect appellee against them. As a corollary to this argument, appellant also argues that appellee was injured as a result of certain hazards inherent in the activity of roller skating, against which appellant had no duty to protect appellee. We shall refer to these as appellant's "no duty" arguments. Lastly, appellant argues that appellee's testimony established that he was in fact aware of the six-inch drop-off, the wide rail opening, and the layout of the vending machine area, and knew that he was unskilled as a skater, yet voluntarily chose to skate at Radnor Rolls and thus encounter these hazards. This, appellant contends, constituted sufficient evidence of appellee's own subjective knowledge of the risks involved to warrant submission of the defense of assumption of risk to the jury.

These two concepts—one, that a possessor of land has no duty toward a business invitee to guard him against obvious dangers or the risks of an activity generally known to be dangerous, and two, that plaintiff assumed the risk of his injuries by voluntarily encountering a known danger—have often been considered to be simply two different types of the defense of assumption of the risk. Recently, however, courts have clarified that the first concept, the "no

1. As is noted *infra,* appellant's challenge to the judge's refusal to charge on assumption of risk relates only to appellant's demand for a new trial and not to appellant's demand for judgment n.o.v. At no time prior to appeal did appellant argue that because appellee assumed the risk, appellant was entitled to judgment as a matter of law.

duty" concept, is distinct from the defense of assumption of the risk. *See Bowser v. Hershey Baseball Assoc.,* 357 Pa.Super. 435, 516 A.2d 61 (1986). The "no duty" concept involves a finding that the defendant had no duty to the plaintiff and, therefore, was not negligent. The defendant is not liable regardless of whether defendant could successfully raise the assumption of the risk defense. In the second category, the defendant owed a duty but may be relieved of liability because the plaintiff assumed the risk. We will examine the way in which these two concepts are conceptually different, involving as they do different legal standards, different evidence, and different burdens of proof. Although both concepts have been classified as species of assumption of the risk, for purposes of clarity it would be preferable to view the first concept as the "no duty" theory and the second as the "assumption of the risk defense".

Cases in which the defendant is found to have no duty toward the plaintiff typically involve a possessor of land defendant and a business invitee plaintiff. *Carrender v. Fitterer,* 503 Pa. 178, 469 A.2d 120 (1983); *Jones v. Three Rivers Management Corp.,* 483 Pa. 75, 394 A.2d 546 (1978); *Bowser v. Hershey Baseball Assoc.,* 357 Pa.Super. 435, 516 A.2d 61 (1986). These cases establish that a possessor of land has no duty to protect a business invitee against "known" or "obvious" hazards. For a danger to be "known" to the invitee, it must "not only be known to exist, but ... also be recognized that it is dangerous and the probability and gravity of the threatened harm must be appreciated." *Carrender v. Fitterer,* 503 Pa. at 185, 469 A.2d at 124 (quoting Restatement (Second) of Torts § 343A comment b). A danger is deemed to be "obvious" when "both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising normal perception, intelligence, and judgment." *Id.,* 503 Pa. at 185, 469 A.2d at 123 (quoting Restatement (Second) of Torts § 343A, comment b). Examples of obvious hazards are clearly visible patches of ice, *Carrender v. Fitterer,* uneven steps, *Villano v. Security*

*Savings Assoc.*, 268 Pa.Super. 67, 407 A.2d 440 (1979), and (for someone attending a baseball game) the possibility of being hit by a wayward baseball. *Bowser v. Hershey Baseball Assoc.; Jones v. Three Rivers Management Corp. See also Ferencz v. Milie,* 517 Pa. 141, 535 A.2d 59 (1987) (evidence that ice patches may have been known to or discoverable by defendant possessor of land but not known by or obvious to plaintiff invitee gives rise to jury question as to whether such hazards were "obvious" or "known" hazards); *Malinder v. Jenkins Elevator Co.,* 371 Pa.Super. 414, 538 A.2d 509 (1988) (risk of calling elevator by tilting one's head into elevator shaft is obvious and known hazard).

■ "No duty" cases, therefore, apply to a particular plaintiff/defendant relationship (e.g. business invitee/possessor of land), involve an objective as well as subjective standard for judging the plaintiff's appreciation of the risk, and place the burden of proof on the plaintiff since the duty of the defendant is an element of plaintiff's prima facie case.

As we will explain more fully hereinbelow in connection with our discussion of the applicability of the defense of assumption of the risk to the instant case, the precise status under Pennsylvania law of some forms of the doctrine of assumption of the risk is presently unclear. Nonetheless, the "no duty" concept, particularly as it is manifest in a factual situation like that before us today, unquestionably remains as a viable doctrine. *See Carrender v. Fitterer; Malinder v. Jenkins Elevator Co.*

■ In contrast to the "no duty" theory, the defense of assumption of the risk requires that the defendant show that the plaintiff was "subjectively aware of the facts which created the danger and ... must have appreciated the danger itself and the nature, character and extent which made it unreasonable." *Crance v. Sohanic,* 344 Pa.Super. 526, 530, 496 A.2d 1230, 1232 (1985), quoting *Weaver v. Clabaugh,* 255 Pa.Super. 532, 388 A.2d 1094 (1978). The plaintiff's encountering of the risk must also have been voluntary. *Marinelli v. Montour R.R. Co.,* 278 Pa.Super.

403, 420 A.2d 603 (1980); Restatement (Second) of Torts, § 496E, comment c (1977). These two requirements are summed up in the rigorous standard enunciated in *Fish v. Gosnell,* 316 Pa.Super. 565, 578, 463 A.2d 1042, 1049 (1983): "Preliminary and deliberate conduct done with an awareness of the specific risks inherent in the activity is a proper basis for implying assumption of the risk."

█ Assumption of the risk contrasts with "no duty" cases in that assumption of the risk requires that the plaintiff subjectively understand the risk. "No duty" cases find a defendant not liable if a reasonable person in the position of the plaintiff would have recognized the danger, in addition to finding no liability where the plaintiff did in fact subjectively appreciate the danger. Assumption of the risk is an affirmative defense, to be pleaded and proved by the defendant, Restatement of Torts (Second) § 496G, rather than as a part of plaintiff's prima facie case. Assumption of the risk is applicable in a wide variety of situations, not just in suits between parties in some type of special relationship.

It is this form of the doctrine of assumption of the risk that has come under increasing attack in recent years, particularly in states like Pennsylvania where a system of comparative negligence has been enacted. *See Malinder* (Beck, J., dissenting). The basis for the attack on the continued use of the defense of assumption of the risk, importing as it does a complete bar to plaintiff's recovery, is the perceived intent of the legislature in enacting the Comparative Negligence Act, 42 Pa.Cons.Stat.Ann. § 7102 (Purdon 1982). It has been argued that in enacting a comparative negligence scheme that abolishes the prior complete and automatic bar to a plaintiff's recovery that formerly resulted from a finding of contributory negligence, the legislature also clearly intended to eliminate the total bar of the defense of assumption of the risk where the plaintiff's conduct is unreasonable (i.e. negligent) and, therefore, the defense strongly resembles and even overlaps with contributory negligence. *Rutter v. Northeastern Beaver City*

*School District et al.,* 496 Pa. 590, 614–16 n. 6, 437 A.2d 1198, 1210–11 n. 6 (1981) (plurality); *Malinder, supra,* 371 Pa.Super. at 429–443, 538 A.2d at 521–23 (Beck, J., dissenting).

At the present time, a majority of the Supreme Court has not yet directly addressed the issue of whether this form of assumption of the risk, as an affirmative defense that completely bars the plaintiff's recovery, remains a part of a proper negligence analysis. The most recent statement of the Supreme Court on the issue of the effect of the Comparative Negligence Act on the defense of assumption of the risk where "it overlaps and coincides with contributory negligence" expressly left the question open. *Carrender v. Fitterer,* 503 Pa. at 188–89, 469 A.2d at 125. This Court's most recent en banc holding regarding assumption of the risk concerned only the "no duty" form of the doctrine and also expressly did not consider or decide the effect of the Comparative Negligence Act on the defense of assumption of the risk. *Malinder, supra,* 371 Pa.Super. at 428, 538 A.2d at 516.

Thus, we must take our guidance on this issue, to the extent it exists, from those decisions of various panels of this Court that have directly commented on the issue of the post-comparative negligence applicability of the defense to a plaintiff whose conduct could also be characterized as contributory negligence. While we have found no such case where a panel of this Court has actually held that the defense survives the Comparative Negligence Act and is applicable to the case before the Court, we are heavily influenced by the statement appearing in *Fish v. Gosnell,* 316 Pa.Super. 565, 463 A.2d 1043 (1983), to the effect that the defense survives. *Id.,* 316 Pa.Superior Ct. at 576–77, 463 A.2d at 1048. We note that the *Fish* Court did not actually apply the defense to the facts of the case before it, and we therefore conclude that this statement is technically *dictum.* Thus, the status of the defense under Pennsylvania law after the enactment of the Comparative Negligence Act remains unclear. Lacking any definitive holding on the

issue and in the interest of maintaining consistency in our law and in the guidance we provide to the bar, we are forced to conclude that we should proceed to analyze whether the defense of assumption of the risk is fairly raised on the facts of the case *sub judice.*

Since the Comparative Negligence Act abolished the complete bar to recovery formerly resulting from a finding of contributory negligence in any degree and yet we feel bound to analyze whether in this case the assumption of the risk defense might still operate as a complete bar to appellee's recovery, it is critically important to distinguish between contributory negligence and assumption of the risk. In so doing, we point out that it is precisely the difficulties that inhere in drawing these close distinctions that argue forcefully for the abolition of the defense. *See Rutter, supra; Malinder, supra* (Beck, J., dissenting).

■ The *Fish v. Gosnell* Court has provided us with a credible analysis of the distinguishing characteristics of assumption of the risk. Under that analysis, a plaintiff who acts under circumstances in which he knows or a reasonable person would know that what he is doing is dangerous is merely negligent. His conduct is properly analyzed under the Comparative Negligence Act. *Fish v. Gosnell,* 316 Pa.Super. at 578–79, 463 A.2d at 1049. If he is less than 50% causally responsible for the resulting injury, he will still recover, at least partially.

The assumption of the risk defense, on the other hand, requires more. Only if a plaintiff " 'fully understands' the specific risk, 'voluntarily chooses' to encounter it, 'under circumstances that manifest a willingness to accept it' ", is he said to have assumed the risk. *Id.,* 316 Pa.Superior Ct. at 576–79, 463 A.2d at 1048–49 (quoting *Marinelli v. Montour R.R. Co., supra* ). As the *Fish* Court stated, the rationale for depriving the plaintiff of recompense for his injuries is as follows:

> [T]he essence of the assumption of risk defense is not fault but that the plaintiff changed his position. Before the injury, he intelligently acquiesced in a known danger

and abandoned his right to complain, but afterward, seeks to assert the claim he had waived. *See Jones v. Three Rivers Management Corp., supra.* To imply such waiver from conduct and circumstances alone can be a source of 'misapprehension and confusion' and 'frequent misapplication.' W. Prosser, Law of Torts, at 445 (4th ed. 1971). Aware of this danger, our Court announced, even before comparative negligence, that it would take a 'restrictive attitude' toward the circumstances from which the assumption of risk defense might be implied. *Fahringer v. Rinehimer,* 283 Pa. Superior.Ct. 93, 98–99, 423 A.2d 731, 734 (1980). *Preliminary and deliberate conduct done with an awareness of the specific risks inherent in the activity is a proper basis for implying assumption of the risk.* Conduct close in time and place to the accident, on the other hand, while it may contain an element of voluntary risk-taking, does not demonstrate a deliberate abandonment of the right to complain, but rather is better judged by its reasonableness, that is, by negligence principles.

*Id.,* 316 Pa.Superior Ct. at 578–79, 463 A.2d at 1049 (emphasis added).

We now turn to the application of these various concepts of "no duty" and the assumption of the risk defense to the facts of the case at bar. We first consider appellant's "no duty" argument, i.e., whether the trial court erred in refusing to charge the jury that a possessor of land owes no duty to protect a business invitee against obvious or known dangers and that if the jury found that the dangers that caused appellee's injuries were obvious or known to appellee, its verdict must be in favor of appellant.

A danger is obvious when "both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising normal perception, intelligence, and judgment." *Carrender v. Fitterer.* The condition of the rink—the wide entrance, the six-inch drop-off, the placement of the vending machines—was apparent. None of these conditions was concealed in any

way. However, we cannot say and there was no evidence to suggest that the risk posed by these conditions would be recognized by a reasonable person in the position of appellee, *i.e.*, a skater alternately losing and regaining balance while travelling at a good rate of speed. A six-inch step may be innocuous to the reasonable person *walking* toward it, who will have the step in view for some time before actually encountering it. *See Villano.* However, if the same reasonable person were moving toward the step at a faster pace, fighting for balance on roller-skates, he would not have an adequate opportunity to recognize the danger the step poses to him.

In addition, appellant asserts that the evidence established that the dangers involved were actually known to appellee even if they were not obvious to any reasonable person in appellee's position. However, although appellant states that appellee also subjectively recognized the danger posed by the rink, appellant fails to cite any evidence supporting this assertion. We therefore find that appellant has not established that there was sufficient evidence that the danger encountered by appellee was either "known" or "obvious" so as to warrant the trial court charging the jury on this issue.

Appellant also argues that the jury should have been instructed that appellant would be relieved of any duty toward appellee if the jury concluded that appellee was injured as a result of a danger that is a normal incident of rollerskating, since appellant had no duty to protect against such normal incidents.

 We find that the trial court was correct in concluding as a matter of law that the generally known dangers of roller skating do not include the kind of danger appellee encountered in this case.[2] The trial court relied on

2. Appellee argues that the question of whether the risk or danger that ultimately resulted in appellee's injury was a normal incident of skating, is always an issue of law to be decided by the court. Thus, appellee asserts that the fact that appellant waived its argument that this theory entitles appellant to judgment n.o.v. (i.e., as a matter of law) precludes appellant's argument that it deserves a new trial in

*Oberheim v. Pa. Sports and Enterprises*, 358 Pa. 62, 55 A.2d 766 (1947), in dismissing appellant's claim on this point and we agree that this case controls. The plaintiff in *Oberheim* was attempting to enter the ice skating rink when she fell on a roughened area of ice at one of the

which this issue would be submitted to the jury. Appellee cites no case that so holds, but relies instead on the fact that numerous cases involving this type of issue were in fact decided by the court as a matter of law. *See, e.g., Rauch v. Pennsylvania Sports and Enterprises, Inc.,* 367 Pa. 632, 81 A.2d 548 (1951).

The fact that these cases were decided as a matter of law does not clearly indicate to us that in every case the court makes this decision. In fact, we have found that there is at least one case in which such an issue appears to have been determined to present a jury question, thus requiring a new trial as opposed to judgment as a matter of law. *See Amon v. Shemaka,* 419 Pa. 314, 214 A.2d 238 (1965) (plurality).

We believe the better analysis is as follows. Whether there is sufficient evidence to enable a jury reasonably to conclude that the risk that produced the injury was a normal incident of skating that plaintiff is charged with knowledge of, as defined by existing case law, is a question of law. Here, for example, the trial court correctly concluded as a matter of law that there was not sufficient evidence to submit the question to the jury.

There are also cases where the evidence so clearly shows that the risk *was* a normal incident of the activity involved that the issue is decided as a matter of law. *See, e.g., Smollett v. Skayting Development Corp.,* 793 F.2d 547 (3d Cir.1986) (applying Virgin Islands law).

But it is equally likely that there would be a case where the evidence was such that a jury could equally reasonably conclude that the risk that produced the injury either was a normal incident or was not. In such a case, where the facts are not similar enough to those presented in any decided case so as to make the resolution clear as a matter of law, the issue is for the jury pursuant to an adequate charge on the legal standard that will guide its decision. *See Ferencz v. Milie, supra,* 517 Pa. at 151, 535 A.2d at 64 (court concludes that a *jury question* was raised as to whether a particular hazard was obvious or known to plaintiff and thus not within defendant's duty of protection); *Carrender v. Fitterer,* 503 Pa. at 185, 469 A.2d at 124 (question of whether hazard is obvious or known is for jury). *Cf. Jones v. Three Rivers Management Corp.,* 483 Pa. 75, 394 A.2d 546 (1978).

In any event, the question of whether this issue is ever one that might warrant submission to the jury is not one that we must actually decide today, since here we determine that, as a matter of law, there was insufficient evidence that appellee's injuries were caused by a normal incident of skating to warrant submission to the jury. Considering the present unclarity in our law regarding this issue, we cannot in fairness find that appellant has completely waived appellate review of the trial court's decision on the "normal incident" theory simply by moving for a new trial on the theory as opposed to moving for judgment n.o.v.

entrances. The uneven condition of the ice surface had been created by a mixture of dirt, paper, and cigarette butts frozen into the ice, which maintenance people at the rink had collected and left at that location after cleaning the surface of the rink proper. Plaintiff won a jury verdict in the court below. On appeal, the court dismissed appellant ice skating rink's contention that its motions for judgment n.o.v. and for a new trial should have been granted on the ground that the Mrs. Oberheim assumed the risks attendant to ice skating:

> The appellant's contention that Mrs. Oberheim voluntarily assumed the risk of injury and is therefore barred from recovery is equally without merit. It will readily be conceded that an invitee of an ice skating rink assumes the ordinary risks incidental to the sport, such as the risk of injury from falling because of imperfections and inequalities on the surface of the ice reasonably to be anticipated. (Citation omitted). But, the invitee is not to be held to have assumed risks arising beyond the skating area from dangerous conditions of entrance and exit originating from other than the ordinary and foreseeable possible effects of skating on the ice. Here, likewise, the fact that Mrs. Oberheim may have known that an irregular and rough area existed in the passage way to the rink does not impel a legal conclusion that she assumed the risk of her injury.

*Id.*, 358 Pa. at 68, 55 A.2d at 769. *See also McMillan v. Mountain Lauren Racing Inc.*, 240 Pa.Super. 248, 367 A.2d 1106 (1976).

 It is true that defendants have no duty to protect roller skaters against the typical risks of roller skating, such as falling down or being bumped by other skaters. These are risks general to skating at any rink. In contrast, the evidence here did not suggest that appellee's accident was caused by a risk general to skating, but rather that it was caused by a risk specific to the Radnor Rolls rink, i.e., the 60–foot wide opening in the rink and the six-inch drop-off.

█ The initial incident in the string of causation leading up to appellee's accident was his losing his balance after being jostled by another skater. This is a common enough occurrence on the skating rink, and is a risk any skater may be said to be aware of when taking the floor. However, the design features peculiar to Radnor Rolls contributed significantly to the nature and severity of appellee's resulting injury. Had there not been such a wide opening in the railing around the rink, appellee might well have been able to stop himself against the railing. Had there not been a six-inch drop-off merely eight feet from the rink surface, Berman would not have been propelled with such force into the vending machine area, where he hit his head against a shelf. While charged with knowledge of the general risks of skating, a skater is not charged with knowledge of how the risk to him is increased above that caused by normal skating by the physical layout of the building. We find that the trial court did not err in denying appellant's motion for a new trial on these grounds.

We now analyze appellant's claim that the trial court erred in refusing to instruct the jury on the *defense* of assumption of the risk. Appellant argues that sufficient evidence was offered at trial to have submitted the issue of assumption of risk to the jury. Appellant contends that appellee's own testimony demonstrated that he was aware of the six-inch drop-off, the presence of the vending machines, and the possibility of falling while skating. Appellant claims that appellee's initial decision to skate despite these factors was assumption of the risk. Appellant also finds assumption of the risk in the fact that during the course of appellee's progress toward the shelf on which he hit his head appellee in fact regained his balance and could have stopped, yet chose to continue skating. We disagree. We find this evidence insufficient to require that the jury be instructed on assumption of the risk.

Appellee's choosing to skate despite his general awareness that roller-skaters occasionally fall, that vending machines were located approximately fifty feet from the skat-

ing rink, and that the floor surrounding the rink dropped off six inches a short distance from the rink does not constitute "preliminary and deliberate conduct done with an awareness of the specific risk" which caused his injury, i.e., the risk of losing control of his skates, shooting out over the drop-off, and running into the protruding shelf in the vending area. No evidence was introduced to show that appellee fully understood the danger the design features of the rink posed to him. In our view, it would be only the unusually imaginative and farsighted skater who would fully understand the danger posed by such factors in combination until the moment he or she was travelling toward the shelf.

Equally meritless is appellant's argument that appellee's failure to stop himself in one of the few moments in which he regained his balance during his careening progress toward the vending machine area demonstrates assumption of the risk. The period of time in which appellee's journey from the skating floor to the shelf on which he hit his head took place was too short to permit him to make an intelligent and voluntary decision to stop or not. This is conduct "close in time and place to the accident" rather than the "preliminary and deliberate conduct" required for assumption of the risk. As the *Fish v. Gosnell* Court stated in analyzing facts generically similar to these,

> Yet these last minute decisions, of the sort that might be heavily influenced by an erroneous guess as to ... speed ... are not those that indicate an intelligent acquiescence to the possible life-or-limb consequences. They are not made "under circumstances that manifest a willingness to accept" the risk.

*Fish v. Gosnell*, 316 Pa.Super. at 578–79, 463 A.2d at 1049.

■ We therefore find that the trial court was justified in refusing to submit the issue of assumption of the risk to the jury. *Marinelli v. Mountour R.R. Co.*, 278 Pa.Super. 403, 420 A.2d 603 (1980).

## 2. *Causation in Fact*

■■■■ Appellant further contends that the trial court erroneously failed to instruct the jury on the issue of causation in fact. When evaluating a claim that the trial court erroneously instructed the jury, the charge must be viewed in its entirety. *Riddle Memorial Hospital v. Dohan*, 504 Pa. 571, 475 A.2d 1314 (1984); *Olsen v. Dietz*, 347 Pa.Super. 1, 500 A.2d 125 (1985). "Unless the charge as a whole can be demonstrated to have caused prejudicial error, we will not reverse for isolated inaccurracies." *Riddle Memorial Hospital v. Dohan*, 504 Pa. 571, 576, 475 A.2d 1314, 1316 (1984). Moreover, a trial court has wide latitude as to the manner in which it charges the jury. Any particular language may be used as long as it fully and adequately conveys the applicable law. *Seewagen v. Vanderkluet*, 338 Pa.Super. 534, 488 A.2d 21 (1984).

The trial court's charge to the jury on the issue of causation was as follows:

Now I said to you before that one of the essential elements of the plaintiff's claim and of the defendant's defense of contributory negligence is what is known as legal cause. It is not enough for someone simply to be negligent in a vacuum in the abstract. That negligence must be the legal cause of the accident. To illustrate what I mean, let's suppose you're driving your car down the highway. And you are two hundred feet from the intersection. And you go over the center line of the highway and drive in the direction of oncoming traffic. But there's no oncoming traffic there, but there's an accident that happens up at the intersection. By going over the center line of the highway, your negligence—you are negligent. But did your negligence cause the accident up at the intersection? Of course not. Your negligence cannot be considered under those circumstances to be a substantial factor in bringing about the intersection accident. Your negligence had absolutely nothing to do with that accident. And therefore, because your negligence is not a legal cause, that is a substantial factor in

bringing about that intersection accident, nobody can say that you are responsible, that is liable, for the damages caused at the intersection accident. In this case, the plaintiff has the burden of proving that the defendant was negligent in the manner in which the skating rink was designed and controlled and that such negligence was a legal cause of the accident.... In order for negligence or contributory negligence to be a legal cause of an accident, it merely must be a substantial factor in bringing about the accident.... A substantial factor is a real factor, not an imaginary one or a fanciful one, but simply a real factor in bringing about the accident that occurred in this case.

N.T., 9/26/86, pp. 79–81.

 We find this instruction to be sufficient. While the court did not explicitly define the term causation-in-fact, the example it gave of a car crossing the center line of the road embodies the essentials of the concept. This example correctly conveyed the necessary factual or commonsensical meaning of the causation requirement, i.e., that it must be shown that "but for" the defendant's negligent act or failure to act, the plaintiff's harm would not have occurred. Given the traditional deference given to a trial court's choice of language in conveying to the jury often complex legal theories in an effort make the jury truly understand them, we find no error in this trial court's decision to eschew confusing terminology and instead to instruct via example.

 The cases appellant cites do not mandate a contrary result. Appellant seeks to demonstrate that Pennsylvania law requires a separate instruction expressly regarding but-for causation. We are aware of no Pennsylvania precedent containing this requirement. In fact, the better view regards causation-in-fact as simply part of the overriding requirement that the defendant's conduct be a substantial factor in bringing about the harm, as to which the trial court here fully instructed the jury. *See Pachesky v. Getz,*

353 Pa.Super. 505, 510 A.2d 776 (1986); *Whitner v. Lojeski,* 437 Pa. 448, 263 A.2d 889 (1970) (plurality).

### 3. *Admission of Photograph*

Appellant next claims that it is entitled to a new trial on the ground that the trial court erroneously admitted into evidence a photograph taken at another roller rink that showed a smaller entrance/exit opening than that existing at Radnor Rolls. Appellant objected to admission of this photograph on the basis that it was not necessarily indicative of industry custom. Appellee requested admission of the photograph for the purpose of aiding the jury in understanding and evaluating the testimony of his expert witness regarding roller rink construction. The trial court admitted the photograph with the following instruction to the jury:

I want to caution you very specifically that the mere fact that there is in evidence a photograph of another roller skating rink not designed in the same manner as the roller skating rink in this case is not evidence which will permit you to conclude that the Defendant in this case was negligent or at fault for failing to design or have constructed his roller skating rink in the same manner as the photograph on Plaintiff's Exhibit 4. The only purpose for which P–4 is being offered and shown to you is so that you can compare the Radnor Rolls rink with another rink and receive some idea of what a rink would look like with a smaller opening off the roller skating surface.

N.T. 9/23/86, p. 152.

The admission of a photograph is a matter within the sound discretion of the trial court, *Tolbert v. Gillette,* 438 Pa. 63, 260 A.2d 463 (1970); *Fahringer v. Rinehimer,* 283 Pa.Super. 93, 423 A.2d 731 (1980). A new trial will not be granted unless there has been a manifest abuse of discretion in admitting the evidence. *Eves v. Tritch,* 162 Pa.Super. 443, 58 A.2d 364 (1948).

We find that the trial court did not abuse its discretion in the case sub judice. Even assuming arguendo that it would have been improper to admit the photograph for the

purpose of establishing industry custom, a question we need not decide here, the court did not do that. Instead, the court admitted the photograph solely for the purpose of assisting the jury in visualizing a smaller rink opening, and gave the jury explicit instructions to that effect. "It is elementary that evidence admissible for one purpose is not rendered inadmissible because it would be inadmissible for another purpose and because the jury might improperly consider it for that other purpose." *Bialek v. Pittsburgh Brewing Company,* 430 Pa. 176, 185, 242 A.2d 231, 235 (1968). It is the purpose for which the court did admit the evidence that we evaluate. We find that the trial court did not abuse its discretion in admitting the photograph to aid the jury in visualizing a different kind of rink opening.

### III. DELAY DAMAGES

Appellant's final contention is that the trial court committed reversible error in assessing delay damages without regard to the Pennsylvania Supreme Court's opinion in *Craig v. Magee Memorial Rehabilitation Center,* 512 Pa. 60, 515 A.2d 1350 (1986). In that opinion, the Supreme Court suspended the effect of the mandatory provisions of the delay damages rule assessing damages against defendants without regard to fault, and instituted in their stead a system of evaluating the defendant's responsibility for the delay and assessing damages proportionately.

Appellant's claim that *Craig* applies to this case is completely meritless, for reasons stated in the opinion itself:

[W]e direct that those mandatory provisions of Rule 238 which assess delay damages against defendants without regard to fault are suspended *as of this date* for all cases now pending in the courts of this Commonwealth ... [T]he suspension of the mandatory provisions of Rule 238 is to be given prospective effect only. Those parties whose cases are now in the appellate or post-trial process, who have not asserted attacks on the Rule 238 aspect of the damage award, may not now assert such challenges.

*Id.,* 512 Pa. at 65, 515 A.2d at 1353 (emphasis added). The *Craig* opinion was filed on October 8, 1986. Thus, under

the express terms of the opinion, the Supreme Court suspended the effect of the mandatory provisions of Rule 238 as of October 8, 1986. *Craig* clearly has no effect on judicial action prior to that date. Applying these clear principles to the instant case, we find *Craig* inapplicable here. All of the relevant events in this case took place prior to October 8, 1986. The verdict in the case was rendered on September 26, 1986. Post-trial motions were filed on October 1, 1986. Delay damages were assessed by order dated October 7, 1986. At no time prior to the filing of *Craig* did appellant raise any challenge to the Rule 238 aspect of the damage award. Thus, *Craig* did not require a fault-finding hearing on the delay damages issue in this case.[3] *See Smith v. Barker*, 368 Pa.Super. 472, 534 A.2d 533, 537 (1987) (where verdict was rendered and petition for delay damages was filed prior to filing of *Craig* opinion, *Craig* was inapplicable). Judgment affirmed.

CAVANAUGH, J., concurs in the result.

---

**3.** We note that although the trial judge correctly did not feel bound to apply *Craig* to this case, nevertheless in the interests of justice he reduced the award of delay damages to appellee after reviewing the history of the litigation and concluding that nine months of the delay in resolving the case was the fault of appellee. Appellee has not appealed this reduction in delay damages.