**Paula M. DAVIDOW and Gerald Davidow, Plaintiffs,**

**v.**

**The UNITED STATES of America, Defendant.**

**Civ. A. No. 82–2739.**

United States District Court,
W.D. Pennsylvania.

Feb. 14, 1984.

Paul E. Moses, Pittsburgh, Pa., for plaintiffs.

Anthony M. Mariani, Asst. U.S. Atty., Pittsburgh, Pa., for defendant.

MEMORANDUM OPINION

MARSH, District Judge.

Paula M. Davidow and her husband, Gerald Davidow, the plaintiffs, seek damages from the defendant, The United States of America, to compensate them for injuries they sustained on September 3, 1979, while boating on Raystown Lake, Huntingdon County, Pennsylvania. The suit was brought under the Federal Tort Claims Act. 28 U.S.C. § 2671, et seq. Original jurisdic-

tion is vested in the district court. 28 U.S.C. § 1346(b).

Pursuant to the Federal Tort Claims Act, § 2675, Gerald Davidow filed an Administrative Claim dated November 3, 1980 for damages of $500,000 for his wife and $15,000 for himself. In an accompanying letter (Plaintiffs' Exhibit 31), he claimed loss of consortium. Paula Davidow filed an Administrative Claim dated November 3, 1980 for $2,000,000. On June 8, 1982, her claim was amended to $4,000,000.

The claims were denied by the United States Army Claims Service, Office of the Judge Advocate.

Paula and Gerald Davidow were divorced on September 8, 1982.

This case has been tried on the issue of liability, damages being reserved under Rule 42(a), Fed.R.Civ.P.

Raystown Lake was constructed by the United States Army Corps of Engineers, Baltimore District, as a combination flood control and recreational project pursuant to a national policy and congressional authority.[1]

Raystown Lake is owned by the United States.

The United States Army Corps of Engineers had possession and control of the lake, but supervision was in certain respects shared between the Corps and the Pennsylvania Fish Commission under the terms of a Memorandum of Understanding between those entities dated February 28, 1977 (Plaintiffs' Exhibit 1). In the Memorandum of Understanding between those entities, the *District agreed* to consult with the Commission or propose to the Commission recommendations for specific Regulations which might be desirable for reasons of public safety and to consult with the Commission relative to marking the lake with buoys and posting of speed limits and no wake signs *and provide, install and maintain such buoys as were necessary.*

(Emphasis supplied.) Paul J. Readly, a member of the Corps of Engineers, confirmed that the buoys were purchased and placed by the Corps (Tr. p. 294).

The length of Raystown Lake is over 30 miles. It runs generally north and south. At the north end is a dam. A number of peninsulas penetrate the lake rendering its appearance as serpentine.[2]

The accident occurred off the point of a peninsula at mile marker 23. This peninsula is 1 mile long running in an easterly direction to a point about 25 feet wide. It is covered with a dense growth of foliage, trees, and brush. No one driving a boat down the north or south sides of the peninsula could see across it.[3] There were no posted speed restrictions and no danger buoys were present.

The point of land at mile marker 23 constituted a dangerous area and a hazard to navigation due to severely restricted visibility afforded boaters when approaching the point from opposite directions and close to the shoreline. The situation presented to boaters approaching the tip of the point within 40 feet of the shoreline is a blind curve.

An additional danger at the point exists from underwater land close to the surface of the water as appears in Plaintiffs' Exhibits 3, 5, and 8. This becomes a dangerous hazard when the water becomes choppy for in that event the underwater land cannot be seen as shown in Plaintiffs' Exhibits 4, 6, 7, and 11. All of these exhibits are pictures of the peninsula at mile marker 23.

Gerald Davidow and Barry Anderson had operated their boats on Raystown Lake frequently during the years 1976, 1977, 1978, and 1979. Davidow's boat was 16 feet long; Anderson's boat was 17½ feet long.

On September 3, 1979, Labor Day, the lake was crowded with boaters and the

---

1. Congress under Public Law 87–874 authorized the development of Raystown Lake on the Juniata River.

2. Plaintiffs' Exhibit 2 and Defendant's Exhibit A1.

3. Plaintiffs' Exhibits 3, 4, 5, 6, 7, 8, and 11.

water was rough and choppy. Davidow did not pay any fee for use of the lake for recreational purposes.

On that day, both Davidow and Anderson were driving their boats adjacent to the peninsula at mile marker 23 in an easterly direction. Davidow drove down the southerly side of the peninsula at a distance of about 40 feet from the shore. Anderson was driving down the northerly side along the shoreline. He was cutting in and out (Tr. pp. 25, 27).

Each of them intended to round the point of the peninsula.

As both boats rounded the point, Davidow's boat was proceeding north and Anderson's boat was proceeding south. The speed of the Anderson boat was about 35 miles an hour, and the speed of the Davidow boat was about 20 miles an hour. When each driver saw the other boat, they were approaching each other head-on. Anderson turned his boat to the right and Davidow turned his boat to the left. The boats collided about 40 feet off the point of the peninsula.

According to the Pennsylvania Boating Regulations, published by the Pennsylvania Fish Commission, Davidow should have turned his boat to the right.[4] Also, the regulations provide that the boaters should have been proceeding at a no wake speed since they were within 100 feet of the shoreline.[5] A no wake speed would have been about 5 miles an hour or less (Tr. pp. 87). In 1979, the 100 foot no wake rule was in effect on the lake and enforced (Tr. pp. 539, 562). Davidow had read the regulations and was familiar with all the rules of the lake.

■ Davidow and Anderson in rounding the danger point of the peninsula within 40 feet of the point and both travelling in excess of the no wake speed assumed the risk of collision.[6]

In the Davidow boat were Paula Davidow and their two children. In the Anderson boat were Mrs. Anderson and their two children. When the boats collided, Paula Davidow's seat broke and she was thrown to the bottom of the boat causing spinal cord damage rendering her a permanent quadriplegic. Gerald Davidow was injured to a lesser extent.

At the time of the accident, Robert and Martha Albright were in their boat on the lake. Mrs. Albright saw the collision between the Davidow and Anderson boats. Mr. Albright drove to the Davidow boat and lifted Paula out of the water which was flooding the boat and handed her and the two children to Mrs. Albright in the Albright boat. The Anderson boat was not flooded and none of the Andersons were injured. Mr. Albright saw to it that Paula Davidow was taken to the hospital.

The collision occurred about 40 feet from the point of the peninsula just about where a danger buoy[7] had been located for 4 years. If the Corps of Engineers had replaced the danger buoy in 1979 40 feet from the point of the peninsula, boats could be expected to have rounded the point in excess of 40 feet as they had done for 4 years. Thus, the drivers upon sighting each other would have had more time to turn to the right and the accident would not have occurred (Tr. p. 413).

Mr. Albright had been boating on Raystown Lake since 1975. He was a Deputy Waterways Patrolman with the Pennsylvania Fish Commission from 1976 to 1982. He was a regular boater in the lake since 1975.

A danger buoy was in place about 40 feet from the tip of the peninsula at mile marker 23 in 1975, 1976, and 1977 (Tr. pp. 39–41; 157–159). In the spring of 1978, due to ice and high water, the danger buoy floated upstream about 150 yards from the point

---

4. Defendant's Exhibit G1, pp. 27–28, Item B1.

5. Defendant's Exhibit G1, p. 28, Item No. 8.

6. Gerald Davidow was found to be 100% responsible by a Common Pleas Court jury in Allegheny County, Pennsylvania (Tr. pp. 113–114).

7. A danger buoy is a vertical, open-faced, diamond-shaped marker which means "danger" (Plaintiffs' Exhibit 29H; Defendant's Exhibit G1, p. 40, Item F1).

the peninsula at mile marker 23 (Tr. pp. 41–42; 159–160).

Mr. Albright observed the buoy 150 yards out of place. The Albrights sailed to the buoy, pulled the anchor up from the bottom of the lake, and replaced and anchored the buoy at about 40 feet off the peninsula at mile marker 23 where they had observed it during the years 1975 through 1977. There was a danger buoy about 40 feet from the point of the peninsula at mile marker 23 during the years 1975 through 1978.

The danger buoy at the peninsula at mile marker 23 was missing at the start of the boating season in the spring of 1979 (Tr. pp. 42–43; 161).

The Corps of Engineers did not replace a danger buoy off that point during the boating season of 1979.

A danger buoy may warn of a specific hazard. It may also have a distinct cautionary significance at sharp curves. The danger buoy which had been placed 40 feet from the point of the peninsula at mile marker 23 would have indicated to a watercraft operator the existence of a dangerous area.

In 1979, the situation presented to the boaters rounding the point of the peninsula from opposite directions was that of a blind curve. The danger buoy which had been placed about 40 feet off the peninsula at mile marker 23 indicated danger from the blind curve and danger from land under shallow water which could not be seen when the water was choppy (Plaintiffs' Exhibits 4, 6, 7, and 11). The risks presented by this dangerous point were great. The severe limitation to visibility was known to the Park Rangers who had agreed to provide, install, and maintain such buoys as were necessary (Plaintiffs' Exhibit 1; Tr. p. 294).

When the danger buoy was in place about 40 feet off the point at mile marker 23 during the years 1975 through 1978, no collision had occurred. In 1978, the estimated boat launches were over 58,000.

Had the danger buoy been in place off the peninsula point in 1979, as it had been during the years 1975 through 1978, the Davidow and Anderson boats would have passed each other in excess of 40 feet from the point and would have been in a position to see each other with sufficient time to have turned to the right and avoided the collision (Tr. pp. 401–402).

As Mr. Albright testified (Tr. p. 413): "... when that buoy was there 40 feet offshore, coming down the shore line you could see that buoy a hundred yards before you ever got to the point because it set directly out in front of it.

"Q. And what opportunity, if any, would that give you to see and avoid another boat coming down within roughly the same distance?

"A. It guided your boat out around the point far enough so when the two boats came around the point, they would have seen each other in plenty of time."

In 1979, Paul J. Readly, a Park Ranger employed by the Army Corps of Engineers, was ordered by George E. Tabb, also a Park Ranger employed by the Army Corps of Engineers and Assistant Manager of the lake, to remove a danger buoy off the peninsula at mile marker 23. This buoy had floated to a position about 100 feet off the shore of the peninsula (Tr. pp. 276, 277) between mile marker 22 and mile marker 23 (Tr. p. 306). It had drifted there from some other place and was removed out of safety considerations for the boating public (Tr. pp. 323, 324). Readly cut the buoy loose about 2 weeks before Labor Day (Tr. p. 306).

Buoys on the lake had been purchased by the Army Corps of Engineers and placed by the Park Rangers at various points in the lake (Tr. p. 294). The Park Rangers were required to inspect buoys and place danger buoys at danger points to protect the boating public from such hazards in keeping with the existing standard of safety.

The failure of the Park Rangers, employees of the defendant, to maintain a danger buoy in 1979 off the tip of the peninsula at mile marker 23 was not a discretionary act such as would entitle the

defendant to the "discretionary function" exception to the Federal Tort Claims Act. 28 U.S.C. § 2680(a).

The failure of the defendant to maintain the danger buoy about 40 feet off the dangerous peninsula point at mile marker 23 during the boating season in 1979 was a willful failure to guard and warn against the danger at that point in violation of the Pennsylvania Recreational Use of Land and Water Act, 68 P.S. § 477–1 et seq.

Section 477–6 provides:

"Liability not limited. Nothing in this act limits in any way liability which otherwise exists: (1) for willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity."

The willful failure of the defendant to guard and warn the plaintiffs of the danger at that point was the cause of the injuries to the plaintiff, Paula M. Davidow.

Judgment will be entered in favor of the plaintiff, Paula M. Davidow, and against the defendant.

Judgment will be entered in favor of the defendant and against the plaintiff, Gerald Davidow.