586 A.2d 978

Joan M. BARAN and Raymond Baran, Co–Administrators of the Estate of Robert Baran, Deceased, Appellants,

v.

PAGNOTTI ENTERPRISES, INC., d/b/a Pagnotti Enterprises and/or Pagnotti Coal Company, a Pennsylvania Corp., The Sullivan Trail Coal Co., Inc., a Pennsylvania Corp., Coal Heat Co., Inc., a Pennsylvania Corp., Louis Pagnotti, Sr., Louis Pagnotti, Jr., and Louis Pagnotti, III, Appellees.

Superior Court of Pennsylvania.

Argued Oct. 31, 1990.

Filed Feb. 21, 1991.

R. Thomas Price, Philadelphia, for appellants.

Thomas B. Helbig, Wilkes–Barre, for appellees.

Before McEWEN, MONTEMURO and JOHNSON, JJ.

OPINION PER CURIAM:

Appellants Joan and Raymond Baran (hereinafter "Barans"), as co-administrators of the estate of their son, Robert Baran, brought these Wrongful Death and Survival actions against appellees Pagnotti Enterprises, Inc., et al (hereinafter "Pagnotti"), seeking compensatory and punitive damages arising out of the death of Robert Baran. At the close

of the Barans' evidence in a jury trial, the trial court granted Pagnotti's request for a compulsory nonsuit. The Barans appeal from the trial court's denial of their request for removal of the nonsuit, arguing that the court did not apply the appropriate standard in deciding the motion for a compulsory nonsuit. We agree with the Barans that the trial court erred in granting the nonsuit, and reverse and remand this case for further proceedings.

It has long been settled that a compulsory nonsuit can only be granted in cases where it is clear that a cause of action has not been established. The plaintiff must be given the benefit of all favorable evidence along with all reasonable inferences of fact arising from that evidence. Any conflict in the evidence must be resolved in favor of the plaintiff. . . . We must therefore review the evidence to determine whether the order entering judgement of compulsory nonsuit was proper.

*Gorfti v. Montgomery*, 384 Pa.Super. 256, 261–62, 558 A.2d 109, 112 (1989), *allocatur denied* 524 Pa. 608, 569 A.2d 1367 (1989), *quoting Coatesville Contractors and Engineers, Inc. v. Borough of Ridley Park*, 509 Pa. 553, 559–60, 506 A.2d 862, 865 (1986).

The testimony at trial established the following facts. Pagnotti owns a 1,500 acre parcel of undeveloped coal mining property located in Hazle Township, Luzerne County, Pennsylvania. Numerous strip mining pits are located on the property. The nineteen year-old decedent, Robert Baran, and his friends were in the habit of congregating on Pagnotti's premises. At around nine-thirty or ten o'clock in the evening of June 5, 1983, the group of friends, including Robert Baran, met on Pagnotti's property to visit with each other and listen to music on their car tape players. When Robert left the group that night, he drove his car along a road which leads off the property to a nearby highway. A very large strip mine pit borders a portion of this access road. The next morning, Robert's mother alerted Robert's friends that Robert had never come home the previous night. Two of the friends returned to the property and

discovered Robert's body lying near his vehicle at the bottom of the 150 to 200 feet deep strip mining pit which abuts the access road. Testimony at trial revealed that the night in question was very dark, with no moonlight or artificial light to illuminate the property.

The Barans brought this suit on behalf of the estate of Robert Baran to recover damages for economic loss and pain and suffering arising out of the accident.

Pagnotti raises the Recreation Use of Land and Water Act, 68 P.S. § 477–1 *et seq.*, as a defense to its liability. The Act relieves landowners of the duty to keep the premises safe or to warn of dangerous conditions, uses, structures or activities thereon. 68 P.S. § 477–3. Likewise, those landowners who by some means invite or permit others to use their property for recreational purposes extend no assurances that the premises are safe, assume no duty of care toward recreational users, and incur no liability for negligent injury to the users. 68 P.S. § 477–4. This statutory immunity is subject to two exceptions: an owner is not insulated from liability if the owner charges a fee to persons who enter the land for recreational purposes, 68 P.S. § 477–6; nor does the Act relieve the owner of liability for wilful or malicious failure to warn or guard against a dangerous condition, use, structure or activity. *Id.*

The stated purpose of the Act is to encourage owners of land to make land available to the public for recreational use, 68 P.S. § 477–1. The Act has been interpreted to limit the liability of all landowners, private and public, who allow free access to their unimproved land, for injuries that occur on the land as a result of recreational activity. *Thomas Walsh v. City of Philadelphia*, 526 Pa. 227, 585 A.2d 445 (1991) (Recreation Use of Land Act protects private and public owners who allow free and indiscriminate access to their unimproved land for recreational purposes); *Gallo v. Yamaha Motor Corp., U.S.A.*, 335 Pa.Super. 311, 484 A.2d 148 (1984) (where snowmobile collision occurred on private road, trial court should have permitted defendants to amend pleadings to raise applicability of Recreation Use of Land

and Water Act); *Barrett v. Pennsylvania Gas & Water Co.*, 631 F.Supp. 731 (M.D.Pa.1985) (although gas and water company had repeatedly made attempts to prevent people from swimming in the company reservoir, Act immunized the company from liability to swimmer who was injured while swimming in the reservoir). As the Barans do not dispute the Act's applicability to Pagnotti, we will assume that the Act applies.[1] Therefore, § 477–6, dealing with wilful or malicious failure to guard or warn against a dangerous condition, provides the only basis upon which Pagnotti may be held liable for the incident involving Robert Baran.

■ The issue before us is whether the trial court erred in granting a nonsuit on the basis that as a matter of law, appellants failed to sustain their burden of showing that appellees wilfully or maliciously failed to warn Robert Baran about the pit or to guard against his injuries pursuant to § 477–6. Although neither our Supreme Court nor this Court has interpreted § 477–6, in *Hahn v. Commonwealth,*

1. Trial testimony reveals that Pagnotti considered Robert Baran and other visitors to the property to be trespassers, and in fact, made efforts to keep the general public off of the property. *See* N.T. November 30, 1988 at 12–14. Because the stated purpose of the Act is to encourage landowners to make their land and water available for recreational purposes, there may be some question as to the availability of the Act's immunity provisions to landowners who attempt to keep people off of their land. One federal district court in Pennsylvania has held that the clear language of the Act "provides that an owner of land, regardless of whether he holds open his land to others," is not liable for injuries stemming from recreational use of the property. *Barrett v. Pennsylvania Gas & Water Co., supra.* A split exists among other jurisdictions which have interpreted the model Recreation Use Act. *Compare Johnson v. Stryker Corp.,* Ill.Ct.App., 70 Ill.App.3d 717, 26 Ill.Dec. 931, 388 N.E.2d 932 (1979) (holding that the Act protects landowners whose property is used gratuitously, with or without permission, for recreational purposes) with *Georgia Power Co. v. McGruder,* 229 Ga. 811, 194 S.E.2d 440 (1972) (holding Act did not bar suit where landowner had expressly denied use of land by posting "keep out" signs on property) and *Gibson v. Keith,* 492 A.2d 241 (Del.1985) (holding that Act could not used to bar recovery against an uninviting owner in suit brought by trespasser). We find no need to address this question, as the Barans do not dispute that the Act applies. We note that even if Robert Baran were treated as a trespasser, the same duty against wilful or wanton misconduct would apply. *See infra* n. 2.

18 Pa.D & C 3d 260 (1980), the court of common pleas equated the § 477-6 standard of "wilful and malicious" misconduct to the standard owing to gratuitous licensees at common law, that is, liability for wilful or wanton injury.[2] *See also Livingston By Livingston v. Penna. Power and Light Co.,* 609 F.Supp. 643 (1985), *aff'd.* 782 F.2d 1029 (3d. Cir.1986). A gratuitous licensee is a person who is permitted, expressly or impliedly, to enter upon the land of another solely for the licensee's own accommodation, benefit, or convenience, and not for the owner's benefit or interest. *Sharp v. Luksa,* 440 Pa. 125, 269 A.2d 659, 660 (1970); *Potter Title & Trust Co. v. Young,* 367 Pa. 239, 80 A.2d 76, 78 (1951); *Oswald v. Hausman,* 378 Pa.Super. 245, 548 A.2d 594, 598 (1988); 27 P.L.E. Negligence § 42. Because the Act concerns situations analogous to that of the gratuitous licensee, that is, landowners permitting free access to their property to the public for the public's recreational pursuits and not for the benefit of the landowner, we agree with the *Hahn* court that the Act's "wilful and malicious" standard represents a codification of the standard of care owing to a gratuitous licensee at common law.

In defining the wilful and wanton standard applicable in cases involving gratuitous licensees, Pennsylvania decisional law has relied on the Restatement (Second) of Torts provision regarding the duty owed to licensees:

**2.** We note that at common law, this "wilful and wanton" standard applied to landowners in cases where the gratuitous licensee sustains injury from the natural or artificial condition of the land itself, such as "defects, obstacles or pitfalls." *Potter Title & Trust Co. v. Young,* 367 Pa. 239, 80 A.2d 76 (1951); *see also Congini by Congini v. Portersville Valve Co.,* 504 Pa. 157, 470 A.2d 515, 519 (1983). On the other hand, where the injury stemmed from the owner's "active" negligence, for example, "negligence in the operation of machinery or of moving vehicles whereby a person lawfully upon the premises is injured," the owner owed the gratuitous licensee a duty of ordinary care. *Potter Title & Trust, supra,* 367 Pa. at 242–44, 80 A.2d at 78–79. We also note that the "wilful and wanton" standard is also the standard applied in cases involving trespassers. *See e.g., Engel v. Friend's Hospital,* 439 Pa. 559, 266 A.2d 685 (1970); *Evans v. Philadelphia Transportation Co.,* 418 Pa. 567, 212 A.2d 440 (1965); *Antonace v. Ferri Contracting Co., Inc.,* 320 Pa.Super. 519, 467 A.2d 833 (1983). *See also* W. Prosser, Law of Torts §§ 58, 60 (4th ed.1971).

§ 342.   Dangerous Conditions Known to Possessor

A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if,

(a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and

(b) he fails to exercise reasonable care to make the condition safe, or warn the licensees of the condition and the risk involved, and

(c) the licensees do not know or have reason to know of the condition and the risk involved.

*See Sharp v. Luksa, supra, quoting* Restatement (Second) of Torts § 342; *Kopp v. R.S. Noonan, Inc.,* 385 Pa. 460, 123 A.2d 429, 431 (1956); *Ott v. Unclaimed Freight Co.,* 395 Pa.Super. 483, 577 A.2d 894 (1990); *Fisher v. Findlay,* 319 Pa.Super. 214, 465 A.2d 1306 (1983).

■ The pit in question constitutes a particularly dangerous pitfall, due to the pit's location directly adjacent to the access road.  There is no question in this case that appellees were fully aware of the condition of their property and the risk of harm posed by the strip mining pits.  In fact, trial testimony reveals that Pagnotti had taken some steps to guard against the danger posed by the pits.  At trial, appellants called on cross-examination appellee Louis Pagnotti, III, an engineer employed by his family's business, the Pagnotti Coal Company ("Company").  Mr. Pagnotti testified that the Company purchased the subject property in the early 1960's for the purpose of coal mining operations.  Mr. Pagnotti stated that in 1982, he became aware of the strip mining pit in which the accident occurred when he went onto the property.  He estimated the dimensions of the pit to be 600 feet long, 300 feet wide and 150 feet deep.  Mr. Pagnotti further testified that there are "dozens and dozens of pits just like this" on the property, all of which were present on the property when the Company bought the property in the 1960's.  N.T. Nov. 30, 1988 at 14.  Pagnotti was aware that people came onto the property; in

fact, the Company had hired professional people to patrol the property, had erected barriers and posted No Trespassing signs on the property. *Id.* at 12. Mr. Pagnotti testified that

> [w]e put up mounds of dirt, we put a wire across—we put everything we could think of to dissuade people from accessing these properties. If there's some kind of access way leading on the road we will string something up across it ... We're just beside ourselves to think of what more we can do to protect this property ...
>
> ... We did everything we possibly could do to protect this property and other properties we owned. We own 30,000 acres of land in 80 municipalities over northeastern Pennsylvania.

*Id* at 14.

When questioned about the lack of reflectors along or near the pit in question, Pagnotti responded that the Company had tried placing reflectors on the property, but that trespassers used them for target practice and shot bullet holes through them. He also indicated that there were so many pits on the property that he wouldn't know where to begin in terms of safeguarding against the danger posed by each individual pit. Signs reading "Danger. Blasting. Keep Away. Danger. Hard Hat Area. No Trespassing, Private Property" were posted along the access road to the property. Thus, there is no dispute here that the Barans met their burden of proving that Pagnotti knew of the existence of the strip mining pit and the danger presented by the pit, and that Pagnotti was aware that people came onto the premises.

■ We now must consider whether the trial court erred in concluding that as a matter of law, appellants failed to prove that Robert Baran did not know of the presence of the pit, that is, that the pit was a non-obvious danger. The court stated:

> [T]he uncontradicted testimony indicated that the decedent had been on Defendants' land on several occasions, in daylight and at night, and was aware of the pit in

question having driven by it in daylight and at night, including June 5, 1983 at night. The pit involved was approximately 600 feet long by 200 to 300 feet wide and 150 to 200 feet deep, containing about twenty (20) acres, and it was not covered, hidden or camouflaged, and was visible, open and notorious. The access road to the pit was wide enough for several cars side-by-side and therefore the pit was an obvious danger with which the decedent was fully aware.

Trial Court Opinion, April 12, 1990 at 5–6. The court concluded that

the Plaintiffs' evidence overwhelmingly indicated, without any reservations, that the decedent, in day and nighttime, was aware of the obvious danger (the pit), having on prior occasions been near it, around it and into it, and therefore there was no duty upon the Defendants to warn of the danger that was obvious.

*Id.* at 7.

Upon reviewing the record and resolving all conflicts in the evidence in favor of the plaintiff, as we must in reviewing a grant of a nonsuit, we must disagree with the trial court's conclusion that the pit was an obvious danger, as the facts do not "lead unerringly to but one conclusion." Our courts have held that a danger is obvious when " 'both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising normal perception, intelligence, and judgment.' " *Berman v. Radnor Rolls, Inc.*, 374 Pa.Super. 118, 542 A.2d 525, 534 (1988), *quoting Carrender v. Fitterer*, 503 Pa. 178, 469 A.2d 120 (1983). Although evidence at trial showed that the decedent knew of the existence of the pit and was familiar with the area, three witnesses testified that the night in question was very dark, as there was no moonlight or artificial light to illuminate the road or property, and that visibility was poor. N.T. December 1, 1988 at 74, 195, 318. The evidence that the night was exceedingly dark would support a reasonable inference that the lighting conditions of the property made it difficult if not impossible

to perceive the edge and location of the pit. Given the singular circumstances of this case, we are reluctant to remove the question of the obviousness of the danger from the jury, as there is evidence to support a finding that the pit was not obvious to, or not likely to be discovered by, the decedent at the time of the accident.

Although the cases cited by Pagnotti address the question of the obviousness of certain dangers, none of the cases present a factual scenario similar to the situation presented by this case. Each case must be decided in view of its own peculiar factual history. We disagree with Pagnotti's position that the evidence at trial "compelled the conclusion that this condition was 'likely to be discovered' by the decedent if he was properly attentive and utilizing his vehicle's headlights," *see* Brief for Appellee at 16, and therefore appellants were relieved of any duty to warn or guard against the danger posed by the pit. This is a factual question which must be presented to and resolved by a jury. *Cf. Ferencz v. Milie,* 517 Pa. 141, 535 A.2d 59, 64 (1987) (whether ice patch, which was difficult to see in daylight, was an obvious danger was for jury to decide). It is elementary to our system of jurisprudence that a jury should decide factual questions. We refuse to usurp this basic function of the jury.

Although we have found no cases directly on point, we find that several cases support our conclusion that the decedent's familiarity with the property does not mandate a finding that the danger was obvious or likely to be discovered. In *Davidow v. United States,* 583 F.Supp. 1170 (W.D. Pa.1984), the court held that the failure of the defendant United States to maintain a danger buoy at a dangerous peninsula point during boating season was a willful failure to guard and warn against a known danger, in violation of § 477–6 of the Act. In *Davidow,* plaintiffs' boat collided with another boat as both boaters were rounding a dangerous point of the peninsula from opposite directions. The point of the collision was a dangerous area due to severe limitations in the visibility of boaters when approaching the

location from opposite directions. The testimony at trial showed that the plaintiff had operated his boat on the lake frequently during the current and preceding three boating seasons and thus was familiar with the area. Despite this, the court found that the failure to maintain a danger buoy at the dangerous peninsula point was a wilful failure to warn against the danger under § 477–6.

In *Slobodzian v. Beighley*, 401 Pa. 520, 164 A.2d 923 (1960), a case involving the duty owed to a gratuitous licensee, the Court held that the question of the defendant property owner's liability for failure to warn or safeguard against the danger posed by an open cellarway on the defendant's property was properly submitted to the jury. *Slobodzian* involved an incident whereby one evening after dark the plaintiff fell into the unguarded hole and injured herself. The evidence showed that although there were lights on the property, the lights were not lit at the time of the accident. There was also evidence showing that the plaintiff was familiar with the property, as she testified that the cellarway was "normally dark." *Id.*, 401 Pa. at 527, 164 A.2d at 926. The fact that the plaintiff had some familiarity with the property did not defeat her ability to recover. The Court stated:

> The exact solvent is not the precise degree of light or darkness, nor is it the presence of the plaintiff on public or private land, indoors or out. It is rather whether under all of the existing conditions, there existed an effective trap to catch the reasonably unwary.

*Id.* Although the *Slobodzian* case does not concern the Recreation Use of Land and Water Act, we find the case to be instructive, as the case deals with the standard owed to a gratuitous licensee, which is the same standard to be applied under § 477–6 of the Act, and the case involves an unguarded hole which was not visible after dark.

We agree with appellants that whether the pit was an obvious to Robert Baran was for a jury to determine, and there was sufficient evidence to warrant submission of that question to the jury. Also to be decided by a jury is

whether Pagnotti made reasonable efforts to make the condition safe or warn the public of the danger posed by the property. The trial court erred in granting a compulsory non-suit. We need not address the Barans' second argument that the grant of the nonsuit was improper on the grounds that Pagnotti introduced elements of its defense during the plaintiffs' case in chief.

Reversed and remanded.