Margaret BARR, Administratrix of the Estate of David Barr, Deceased, a minor and Margaret Barr, in her own right

v.

CITY AND COUNTY OF PHILADELPHIA,
Appellant.

Commonwealth Court of Pennsylvania.

Reargued Oct. 5, 1994.

Decided Jan. 27, 1995.

Alan C. Ostrow, for appellant.

Philip J. Berg, for appellees.

Before COLINS, President Judge, and DOYLE, McGINLEY, SMITH, PELLEGRINI, FRIEDMAN and NEWMAN, JJ.

COLINS, President Judge.

This matter was initially argued before a three-judge panel of this Court on January 31, 1994, and an opinion and order were filed on July 13, 1994. Applications for reargument were filed by appellant, City of Philadelphia, and appellee, Margaret Barr. By order of this Court dated September 19, 1994, the decision and order previously entered were withdrawn, and reargument was granted and held on October 5, 1994 before the Court en banc. After further consideration, the Court adopts the original opinion of the three-judge panel as the opinion of the Court en banc. Said opinion follows.

The City of Philadelphia (City) appeals a March 16, 1993 order of the Court of Common Pleas of Philadelphia County (Common Pleas) denying the City's motions for judgment n.o.v. and for a new trial (post-verdict motions). We reverse and remand.

On June 12, 1983, David Barr (decedent) drowned in what is commonly known as Devil's Pool,[1] a natural body of water in the City's Fairmount Park. On June 6, 1985, Margaret Barr (administratrix), decedent's mother, filed suit against the City averring negligence and willful misconduct with respect to the City's maintenance of Devil's Pool.[2] On April 27, 1992, a jury determined that the City was 55% negligent and that the decedent was 45% negligent. The jury awarded $100,000.00 in the wrongful death action and $600,000.00 in the survival action; both amounts were molded by Common Pleas to reflect the comparative negligence of the parties. Additionally, the verdict was again molded to reflect the addition of delay damages in the amount of $275,915.79, for a total verdict of $660,915.79. The City's post-verdict motions were subsequently denied. The instant appeal followed.

The City argues first, that pursuant to Section 3 of what is commonly known as the Recreational Use of Land and Water Act (Recreation Act),[3] as landowner and possessor of Devil's Pool, it is immune from any claims of negligence arising from decedent's recreational use of the water. Hence, Common Pleas erred in permitting the jury to consider administratrix's negligence claims against the City and in denying the City's corresponding motion for judgment n.o.v. The City argues second, that pursuant to Section 8542(a) of the Judicial Code (Code),[4] it is immune from any claims of willful misconduct arising from decedent's drowning. Hence, Common Pleas erred in permitting the jury to consider administratrix's willful misconduct claims against the City and in denying the City's motion for judgment n.o.v. The City argues third, that pursuant to Section 8542(b)(3) of the Code,[5] the real property exception to governmental immunity, Common Pleas erred in refusing to charge the jury that the City could not be held liable if decedent were found to be a trespasser. Hence, Common Pleas erred in denying the City's motion for new trial. The City argues

1. Devil's Pool is formed by the confluence of the Cresheim and Wissahickon creeks and has shear rock cliffs on three sides.

2. The City does not dispute the fact that it is the landowner and possessor of Devil's Pool.

3. Act of February 2, 1966, P.L. (1965) 1860, 68 P.S. § 477-3, which provides:
   § 477-3. **Duty to keep premises safe; warning**
   Except as specifically recognized or provided in section 6 of this act, [68 P.S. § 477-6], an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes.

4. 42 Pa.C.S. § 8542(a) provides:
   A local agency shall be liable for damages on account of an injury to a person or property within the limits set forth in this subchapter if both of the following conditions are satisfied and the injury occurs as a result of one of the acts set forth in subsection (b):
   (1) The damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally) or section 8546 (relating to defense of official immunity); and

(2) The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b). As used in this paragraph, 'negligent acts' shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.

5. 42 Pa.C.S. § 8542(b)(3) provides:
   (b) **Acts which may impose liability.**—The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:
   ....
   (3) **Real property.**—The care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of the local agency. As used in this paragraph, 'real property' shall not include:
   (i) trees, traffic signs, lights and other traffic controls, street lights and street lighting systems;
   (ii) facilities of steam, sewer, water, gas and electric systems owned by the local agency and located within rights-of-way;
   (iii) streets; or
   (iv) sidewalks.

fourth, that Common Pleas erred in allowing administratrix to present allegedly prejudicial, irrelevant evidence of prior swimming accidents within Fairmount Park but not at Devil's Pool. In addition, Common Pleas compounded this error by denying the City's motion for a new trial.

Administratrix argues first, that pursuant to Section 6 of the Recreation Act, 68 P.S. § 477–6,[6] and Section 342 of the Restatement (Second) of Torts (Section 342),[7] and because the City had extensive, prior knowledge of the obscure, dangerous conditions in Devil's Pool but failed to take any meaningful, curative measures with respect thereto, the City cannot be relieved of liability. The City willfully failed to warn or guard against the obscure, dangerous conditions within Devil's Pool. Under the circumstances, therefore, the City's conduct clearly falls within the purview of Section 342, and as such, the City's conduct invokes the willful or malicious failure to warn or guard exception of Section 6 of the Recreation Act. Administratrix argues second, that because she presented evidence at trial which clearly showed that the City had knowledge of dangerous activities in and around Devil's Pool and because decedent's death was caused in some manner by an unsafe, defective condition of the real estate itself, the Code's real property exception to governmental immunity operates to impose tort liability on the City. Administratrix argues third, that because Fairmount Park is open to the public and because a trial court has wide latitude in charging a jury, Common Pleas did not err in refusing to charge the jury that the City could not be found liable if decedent were found to be a trespasser. Alternatively, pursuant to Section 336 of the Restatement (Second) of Torts,[8] even if decedent were found to be a trespasser, the City is liable. Therefore, the City's claim that under the circumstances, the Code's real property exception insulates it from liability with respect to trespassers is erroneous. Administratrix argues fourth, that Common Pleas properly admitted evidence of prior swimming accidents near, albeit not at Devil's Pool, as this evidence was relevant to show that the City did, in fact, have knowledge of similar dangerous conditions both in Devil's Pool and in other nearby natural bodies of water. This evidence was relevant to demonstrate the City's general awareness of the dangerous nature of the area's natural bodies of water and hence, is essential to establish exceptions to both the Recreation Act's and the Code's general imposition of landowner immunity and governmental immunity respectively.

The issues presented on appeal are: (1) considering that the Recreation Act provides for landowner immunity with respect to neg-

6. 68 P.S. § 477–6 provides:
Nothing in this act limits in any way any liability which otherwise exists:
(1) For wilful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity.
(2) For injury suffered in any case where the owner of land charges the person or persons who enter or go on the land for the recreational use thereof, except that in the case of land leased to the State or a subdivision thereof, any consideration received by the owner for such lease shall not be deemed a charge within the meaning of its [sic] section.

7. Restatement (Second) of Torts § 342 (1964) provides:
§ 342. **Dangerous Conditions Known to Possessor**
A possessor of land is subject to liability for physical harm caused to licensees by a condition of the land if, but only if,
(a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and
(b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and
(c) the licensees do not know or have reason to know of the condition and the risk involved.

8. Restatement (Second) of Torts § 336 (1964) provides:
§ 336. **Activities Dangerous to Known Trespassers**
A possessor of land who knows or has reason to know of the presence of another who is trespassing on the land is subject to liability for physical harm thereafter caused to the trespasser by the possessor's failure to carry on his activities upon the land with reasonable care for the trespasser's safety.

ligence claims, whether Common Pleas erred by not granting the City's motion for judgment n.o.v.; (2) considering that the Code provides for governmental immunity as to willful misconduct claims, whether Common Pleas erred by not granting the City's motion for judgment n.o.v.; (3) because Common Pleas did not charge the jury that the City was immune from liability pursuant to the real property exception with respect to trespassers, whether Common Pleas erred by not granting the City's motion for a new trial; and (4) because Common Pleas permitted the jury to hear and consider evidence of prior, allegedly unrelated drownings in other natural bodies of water near Devil's Pool, whether Common Pleas erred or abused its discretion by not granting the City's motion for a new trial.

■ This Court's "scope of review of a trial court's decision denying motions for judgment n.o.v. or for a new trial is limited to determining whether the trial court abused its discretion or committed an error of law." *United States Fidelity & Guaranty Company v. Royer Garden Center & Greenhouse, Inc.,* 143 Pa.Commonwealth Ct. 31, 40, 598 A.2d 583, 587 (1991), *petition for allowance of appeal denied,* 530 Pa. 663, 609 A.2d 170 (1992).

### I. Applicability of the Recreation Act's Exception to Landowner Immunity

■ A succinct analysis of the Recreation Act is imperative in reaching a determination of the aforementioned issues. The purpose of the Recreation Act is "to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes." Section 1 of the Recreation Act, 68 P.S. § 477–1. Section 3 of the Recreation Act, 68 P.S. § 477–3, provides that owners of recreational land do not owe a duty of care to keep their premises safe for recreational use by others, and Section 4 of the Recreation Act, 68 P.S. § 477–4, provides that said owners do not incur liability for injury to such persons,

unless the owners willfully or maliciously fail "to guard or warn against a dangerous condition, use, structure or activity." Section 6 of the Recreation Act, 68 P.S. § 477–6.

The Pennsylvania Supreme Court has stated that the legislature intended "to limit applicability of the [Recreation Act] to outdoor recreation on largely unimproved land...." *Rivera v. Philadelphia Theological Seminary of St. Charles Borromeo, Inc.,* 510 Pa. 1, 16, 507 A.2d 1, 8 (1986), *appeal after remand on other grounds,* 398 Pa.Superior Ct. 264, 580 A.2d 1341 (1990), *petition for allowance of appeal denied,* 527 Pa. 673, 594 A.2d 659 (1991). The courts have extended immunity under the Recreation Act to public as well as private owners. *Commonwealth v. Auresto,* 511 Pa. 73, 511 A.2d 815 (1986) (immunity pursuant to the Recreation Act extends to the Commonwealth); *Farley v. Township of Upper Darby,* 100 Pa.Commonwealth Ct. 535, 514 A.2d 1023 (1986), *petition for allowance of appeal denied,* 517 Pa. 611, 536 A.2d 1334 (1987) (immunity pursuant to the Recreation Act extends to local government landowners). In addition, the Supreme Court has stated that it would be inconsistent with present public policy trends to extend the Recreation Act to provide blanket immunity to all government owned and operated recreational facilities. *Walsh v. City of Philadelphia,* 526 Pa. 227, 585 A.2d 445 (1991). Section 3 of the Recreation Act provides that a landowner is entitled to immunity when the landowner did not willfully or maliciously fail "to guard or warn against a dangerous condition, use, structure, or activity[ ]" on the land, when the landowner did not charge for the recreational use of the land, or when the injured party entered the land for recreational purposes.

Initially, it must be determined whether Devil's Pool is the type of recreational facility which the legislature intended to fall within the scope of the Recreation Act. As the undeveloped, unimproved area in and around Devil's Pool is open to the public free of charge, and as this same area is used for a myriad of recreational purposes, such as fishing, hiking, picnicking, and swimming, the

land in and around Devils' Pool certainly appears to fall within the purview of the Recreation Act.

Section 6 of the Recreation Act provides an exception to the immunity conferred in Section 3 of that act, but the exception applies only to the willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity. With respect to the instant case, the question becomes whether the City willfully or maliciously failed to warn or guard against the dangerous condition, use, or structure of Devil's Pool.[9]

The Pennsylvania Superior Court has held:

Although neither our Supreme Court nor this Court has interpreted [68 P.S.] § 477-6, in *Hahn v. Commonwealth*, 18 Pa.D & C 3d 260 (1980), the court of common pleas equated the [68 P.S.] § 477-6 standard of 'wilful and malicious' misconduct to the standard owing to gratuitous licensees at common law, that is, liability for wilful or wanton injury. A gratuitous licensee is a person who is permitted, expressly or impliedly, to enter upon the land of another solely for the licensee's own accommodation, benefit, or convenience, and not for the owner's benefit or interest. Because the [Recreation] Act concerns situations analogous to that of the gratuitous licensee, that is, landowners permitting free access to their property to the public for the public's recreational pursuits and not for the benefit of the landowner, we agree with the Hahn court that the [Recreation] Act's 'wilful and malicious' standard represents a codification of the standard of care owing to a gratuitous licensee at common law. . . .

In defining the wilful and wanton standard applicable in cases involving gratuitous licensees, Pennsylvania decisional law has relied on the Restatement (Second) of

Torts provision regarding the duty owed to licensees. . . .

*Baran v. Pagnotti Enterprises, Inc.*, 402 Pa. Superior Ct. 298, 302–03, 586 A.2d 978, 980–81 (1991) (footnote omitted) (citations omitted). The *Pagnotti* court then quotes Section 342 of the Restatement (Second) of Torts, entitled "Dangerous Conditions Known to Possessor."[10]

In arguing that the willful or malicious failure to warn or guard exception of Section 6 of the Recreation Act applies, administratrix provided uncontradicted evidence that the City was fully aware that Devil's Pool was a popular, public swimming hole, that there had been previous drownings and swimming accidents in Devil's Pool, that both immediately prior to and at the time of decedent's death there were no warning signs posted at Devil's Pool relating the danger of swimming therein, that the water in Devil's Pool was not clear, thereby preventing one from seeing far below the surface, that one could enter the water by climbing down rocks which projected outward beneath the water line,[11] and that the City did not have any type of lifesaving equipment on the premises. Further, administratrix presented expert testimony that reasonable, curative measures could have feasibly been taken, such as affixing permanent signs relating the danger of swimming therein, fencing off the area, or making regular, routine patrols of the area.

Finally, the United States District Court for the Eastern District of Pennsylvania has recently held that the exception to immunity conferred by the Recreation Act when a landowner's failure to guard against a dangerous condition is willful involves two elements: (1) Actual knowledge of a danger, that is (2) not obvious to those entering the premises. *Flohr v. Pennsylvania Power & Light Company*, 821 F.Supp. 301 (E.D.Pa.

---

9. The record reveals that there is no dispute that the City had actual knowledge of the prior drownings and swimming accidents and that there were no signs posted indicating that swimming could be dangerous.

10. See footnote 7, *supra.*

11. With respect to the rock configuration at Devil's Pool, see footnote 1, *supra.*

1993). Accordingly, with respect to the evidence which administratrix presented regarding both the City's knowledge of the dangers in and around Devil's Pool and the obscure, dangerous conditions thereabouts, the City's behavior was not prudent. The willful or malicious failure to guard or warn exception of Section 6 of the Recreation Act, therefore, operates to impose liability upon the City in connection with decedent's death if administratrix is able to clear the obstacles presented by the Code's real property exception to governmental immunity.

## II. Applicability of the Code's Real Estate Exception to Governmental Immunity

██ Initially, it must be noted that the immunity provisions set forth in the Recreation Act generally must be read *in pari materia* with the immunity provisions set forth in the Code. *Auresto.* With respect to whether the real property exception operates to impose liability on the City and with respect to administratrix's willful failure to warn or guard averments, the Pennsylvania Supreme Court has held

> that the real estate exception [to governmental immunity] can be applied only to those cases where it is alleged that the artificial condition or defect of the land *itself* causes the injury, not merely when it facilitates the injury by the acts of others, whose acts are outside the statute's scope of liability.

*Mascaro v. Youth Study Center,* 514 Pa. 351, 363, 523 A.2d 1118, 1124 (1987). In addition, this Court has held that

> Mascaro and the subsequent line of cases interpreting it are clear that the injury must result from a defect in the real property itself, that the defect must be the direct cause of the injury, and that inter-

vening acts serve to render the real property exception inapplicable....

*Downing v. Philadelphia Housing Authority,* 148 Pa.Commonwealth Ct. 225, 232, 610 A.2d 535, 538, *petition for allowance of appeal denied,* 532 Pa. 658, 615 A.2d 1314 (1992). "[T]he burden [is] on [administratrix] to prove that the real estate itself was defective and that the real estate's defect caused the injuries, not merely the negligence of the City employees." *Mitchell v. City of Philadelphia,* 141 Pa.Commonwealth Ct. 695, 701, 596 A.2d 1205, 1208 (1991).

Administratrix has argued both in her brief and vigorously at oral argument, that the obscure, dangerous defects within Devil's Pool itself directly caused decedent's death. There is no evidence of record, however, of any specific defect which caused decedent's drowning except for the direct testimony of Philadelphia police officer David Gallus.[12] Officer Gallus testified that one could directly enter the water by climbing down rocks, the desired inference being that there were rocks projecting outward beneath the water line. This Court notes that the administratrix also introduced the testimony of two other experts at trial: Carl A. Silver, Ph.D. (Dr. Silver), a professor of human engineering and statistics at Drexel University, and William Logue (Coach Logue), an aquatic consultant and former men's and women's swimming and diving coach at Drexel University. Dr. Silver testified during cross-examination that he could only speculate as to whether decedent was injured by any obstacle in Devil's Pool. Similarly, Coach Logue testified during cross-examination that he could only speculate as to what may have caused decedent to drown in Devil's Pool.[13]

In addition, there was no evidence of trauma introduced at trial. Officer Gallus further testified that when he recovered decedent's body from Devil's Pool, he did not

---

12. At the time of decedent's death, Officer Gallus held the rank of police diver; Officer Gallus recovered decedent's body from Devil's Pool.

13. Mr. Logue opined that several factors may have contributed to decedent's drowning: rapid

change in the depth of the water; disorientation with respect to the surface due to the murkiness of the water; and sudden change in body temperature because of the frigid temperature of Devil's Pool.

observe any evidence of trauma to the body. Moreover, the medical evidence indicated death by drowning. The Medical Examiner's report (report) was admitted into evidence as plaintiff's exhibit No. P–17. The "REPORT OF DEATH" section of the report provides the following: "Decedent was in [the] Park drinking, he jump [sic] from a bridge into [Devil's Pool], decedent drowned, no apparent trauma." In the "POSTMORTEM REPORT" section, under "PATHOLOGICAL DIAGNOSES," the report states that decedent was suffering from the effects of ethanolism; [14] under "EXTERNAL EVIDENCE OF INJURY," the report states that there was no apparent trauma except for extremely superficial abrasions of the lips, eyelids, and nose; under "INTERNAL EXAMINATION," the report states that "[c]raniocerebral or myelocervical injuries are not present." Finally, in the "REPORT OF TOXICOLOGIST" section, the report indicates that the decedent had been drinking and had a stomach alcohol content of 0.62%, a blood alcohol content of 0.09%, and a urine alcohol content of 0.11%.

■ While administratrix vigorously argues causation issues in her brief, the causation issue was never raised by the City, the burdened party, on appeal to this Court. Specifically, the City did not raise the issue of whether the real estate was defective or whether there was a lack of evidence that such defects caused decedent's drowning. This Court cannot raise these issues *sua sponte*. We must limit ourselves to the issues preserved in the City's brief. Pa.R.A.P. 2116.[15]

The City contends, with regard to governmental immunity, that if this Court concludes (as we have) that the *willful or malicious failure to warn or guard* exception of Section 6 of the Recreation Act removes the Recreation Act's bar to suit, the administratrix

cannot recover, because the real estate exception to governmental immunity provides that a governmental entity cannot be held responsible for *willful misconduct*. In essence, the City would have us declare that "willful or malicious failure to warn or guard" is synonymous with "willful misconduct." We cannot so hold. Willful denotes an act of commission, requiring proof "that the actor [affirmatively] desired to bring about the result that followed, or at least [knew that] it was substantially certain to follow." *Diaz v. Houck*, 159 Pa.Commonwealth Ct. 274, 283–4, 632 A.2d 1081, 1085 (1993). On the other hand, a willful failure to guard or warn denotes an actor's failure to act or an intentional omission rather than an actor's intentional desire to harm, kill, or maim.

Accordingly, we hold that Common Pleas did not err in the treatment of these issues or in its refusal to grant judgment n.o.v. based upon the Recreation Act or the Code.

### III. Propriety of Common Pleas' Refusal to Give Trespass Charge

■ "'So long as the trial court properly covers the law on the issues raised in the case, [the trial judge] is given wide latitude in charging the jury.'" *City of Philadelphia v. Duda*, 141 Pa.Commonwealth Ct. 88, 99, 595 A.2d 206, 211 (1991), *petition for allowance of appeal denied*, 532 Pa. 658, 615 A.2d 1314 (1992) (quoting *Sheehan v. Cincinnati Shaper Company*, 382 Pa. Superior Ct. 579, 586, 555 A.2d 1352, 1356, *petition for allowance of appeal denied*, 523 Pa. 633, 564 A.2d 1261 (1989)). In addition, this Court has held that in reviewing jury instructions "[a] review of the entire charge is necessary to determine whether the trial court erred." *Eckert v. Querry*, 158 Pa.Commonwealth Ct. 421, 426, 632 A.2d 9, 11 (1993). Further, "[a] court's charge to the jury will be upheld if it adequately and accurately reflects the

---

14. Ethanolism indicates an ethanol induced abnormally diminished content of glucose in the blood.

15. Pa.R.A.P. 2116 provides, in pertinent part: The statement of the questions involved must state the question or questions in the briefest

and most general terms.... [N]o point will be considered which is not set forth in the statement of questions involved or suggested thereby.

law and was sufficient to guide the jury in its deliberations.' " *Brill v. Systems Resources, Inc.*, 405 Pa. Superior Ct. 603, 606, 592 A.2d 1377, 1378 (1991) (quoting *Commonwealth v. Person*, 345 Pa. Superior Ct. 341, 345, 498 A.2d 432, 434 (1985)).

Devil's Pool is within the confines of Fairmount Park, one of the largest public municipal parks in the country. The record reveals no evidence that decedent intentionally trespassed. Moreover, all of the evidence presented shows that at the time of decedent's death there were no signs or warnings relating the danger of swimming in Devil's Pool or indicating that it was off limits to the public. The park is a public recreation area frequented every year by thousands of citizens who engage in a myriad of recreational activities.

The City has admitted that there were no warning signs or trespass notices present at Devil's Pool at the time of decedent's drowning. It follows *ipse dixit* that decedent could not have been found to have been a trespasser based upon the evidence presented to the jury. Therefore, this Court holds that Common Pleas did not err in refusing to charge the jury ·on trespassing, because there was no evidence that decedent trespassed; Common Pleas' charge adequately and accurately reflected the pertinent law.

## IV. Admissibility of Evidence Regarding Prior Swimming Accidents Near Devil's Pool

██ "The fundamental consideration in determining the admissibility of evidence is whether that evidence is relevant to the fact sought to be proved." *Starr v. Department of Environmental Resources*, 147 Pa.Commonwealth Ct. 196, 203, 607 A.2d 321, 324 (1992). "Evidence is relevant if it tends to establish facts in issue." *Monaci v. Workmen's Compensation Appeal Board (Ward Trucking)*, 116 Pa.Commonwealth Ct. 172, 175, 541 A.2d 60, 62 (1988). "However, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice or confusion.

Prejudice refers to an undue tendency to suggest a decision on an improper basis and does not refer to merely being detrimental to one party's case." *Morrison v. Commonwealth*, 148 Pa.Commonwealth Ct. 245, 252–53, 610 A.2d 1082, 1086 (1992), *rev'd on other grounds*, —— Pa. ——, 646 A.2d 565 (1994) (citation omitted.) Generally, remoteness of evidence is determinable by distance as well as time. *Finnerty v. Darby*, 391 Pa. 300, 138 A.2d 117 (1958). If the other nearby natural bodies of water where similar accidents occurred are so remote in space/distance from Devil's Pool that they are without probative value, then such evidence will be excluded on the independent ground of irrelevancy. *See Commonwealth v. Scott*, 496 Pa. 78, 436 A.2d 161 (1981); *Gibson v. Department of Public Welfare*, 35 Pa.Commonwealth Ct. 27, 384 A.2d 1030 (1978).

██ This Court holds that Common Pleas erred, when it admitted evidence of prior swimming accidents that did not occur at Devil's Pool, because there was no evidence to demonstrate that the attending circumstances and conditions were similar to those at Devil's Pool when decedent drowned. Moreover, the physical remoteness between the other natural bodies of water where prior swimming accidents occurred and Devil's Pool where the decedent's drowning occurred substantially diminishes any probative value of demonstrating analogous conditions and circumstances. *See Commonwealth v. Clark*, 280 Pa. Superior Ct. 1, 421 A.2d 374 (1980), *affirmed*, 501 Pa. 393, 461 A.2d 794 (1983).

██ This Court acknowledges that the decision "[w]hether to grant a motion for a new trial is within the discretion of the trial court and its decision will not be reversed in the absence of a manifest abuse of discretion or a clear error of law." *Bucks County Water v. 9.180 Feet of Land*, 147 Pa.Commonwealth Ct. 612, 617–18, 608 A.2d 1109, 1112 (1992). In conjunction therewith, "some improperly admitted evidence may be so prejudicial that a new trial is required." *Scranton Penn Furniture Company v. City of Scranton*, 92 Pa.Commonwealth Ct. 45, 52,

498 A.2d 469, 473 (1985). This Court agrees with the City that a new trial should be granted, because evidence of prior, unrelated drownings and swimming accidents near to but not at Devil's Pool cannot provide probative evidence regarding the cause of decedent's death at Devil's Pool, and such evidence was highly inflammatory.

Accordingly, we reverse Common Pleas on its determination that evidence of prior, unrelated swimming accidents was admissible; we affirm Common Pleas in all other respects, and we remand for a new trial consistent with this opinion.

### ORDER

AND NOW, this 27th day of January, 1995, the order of the Common Pleas Court of Philadelphia County in the above-captioned matter is reversed and this matter is remanded for a new trial consistent with the foregoing opinion.

Jurisdiction relinquished.

McGINLEY, Judge, dissenting.

I respectfully dissent to the majority's conclusion that the trial court did not err in its refusal to grant the City's motion for judgment n.o.v. I believe that "willful or malicious failure to guard or warn" is synonymous with "willful misconduct" and therefore disagree with the majority's conclusion that Section 8542(a) of the Judicial Code (Code), 42 Pa.C.S. § 8542(a), does not bar suit in the present matter against the City.

Section 3 of the Recreational Use of Land and Water Act (Recreation Act),[1] 68 P.S. § 477–3, provides:

Except as specifically recognized or provided in section 6 of this act, [68 P.S. § 477–6], an owner of land owes *no duty of care to keep the premises safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition,* use, structure, or activity on such premises to persons entering for such purposes. (Emphasis added.)

Section 6 of the Recreation Act, 68 P.S. § 477–6, states that owners will not incur liability for injury to persons entering their land for recreational purposes unless the owner *willfully or maliciously* fails "to guard or warn against a dangerous condition, use, structure, or activity." The majority concludes, and I agree, that the City is liable under the Recreation Act because the evidence supports a finding that they willfully or maliciously failed to warn or guard against the dangerous conditions of Devil's Pool. However, as noted by the majority, the immunity provision of the Recreation Act must be read in *pari materia* with the immunity provision of the Code. Majority Opinion at 1380. (Citation omitted.)

Pursuant to the Code a local agency will be liable for injury to a person only if "the injury was caused by the *negligent acts* of the local agency or an employee thereof...." 42 Pa.C.S. § 8542(a)(2). (Emphasis added.) "Willful misconduct" does not constitute a "negligent act" for purposes of this section of the Code. *Id.* Thus, the question of whether the City is immune from suit hinges upon whether the City's "willful or malicious failure to guard or warn" is considered a "negligent act" or "willful misconduct".

The majority attempts to distinguish "willful or malicious failure to guard or warn" from "willful misconduct" by assigning to each phrase a different state of mind.

Willful denotes an act of commission, requiring proof "that the actor [affirmatively] desired to bring about the result that followed, or at least [knew that] it was substantially certain to follow." (Citation omitted.) On the other hand, a willful failure to guard or warn denotes an actor's failure to act or an intentional omission rather than an actor's intentional desire to harm, kill, or maim.

Majority opinion at 1381. The implication of the majority's interpretation is that one who willfully fails to guard or warn of a dangerous condition has no desire to bring about harm, or *no knowledge that harm is substan-*

1. Act of February 2, 1966, P.L. (1965) 1860, 68    P.S. §§ 477–1–477–8.

*tially certain to be the result of his/her inaction.* With this distinction I do not agree. Further, the majority's own analysis does not support this conclusion.

In determining that the City is liable under the Recreation Act, the majority relies on a Superior Court case which equates the standard of "willful or malicious failure to guard or warn" to the standard owing to gratuitous licensees at common law, that being, liability for willful or wanton injury. Majority opinion at 1379 (citing *Baran v. Pagnotti Enterprises, Inc.,* 402 Pa. Superior Ct. 298, 302–03, 586 A.2d 978, 980–81 (1991)). The Superior Court states that Section 342 of the Restatement (Second) of Torts, entitled "Dangerous Conditions Known to Possessor", should be relied upon "[i]n defining the wilful and wanton standard applicable in the cases involving gratuitous licensees." *Id.* Restatement (Second) of Torts § 342 (1964) provides:

### § 342. Dangerous Conditions Known to Possessor

A possessor of land is subject to liability for physical harm caused to licensees by a condition of the land if, but only if,

(a) *the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm* to such licensees, and should expect that they will not discover or realize the danger, *and*

(b) he *fails to exercise reasonable care to make the condition safe, or to warn* the licensees of the condition and the risk involved, and

(c) the licensees do not know or have reason to know of the condition and the risk involved. (Emphasis added.)

According to the majority's analysis, in order to make a determination that the City "willfully or maliciously failed to guard or warn" pursuant to Section 6 of the Recreation Act, which the majority did, the court must conclude that the City: (1) had knowledge of the dangerous condition of Devil's Pool; (2) should have realized that such condition involved an unreasonable risk of harm to the public; and (3) failed to exercise reasonable care to make the condition safe, or to warn the public. These elements are consistent with those in the majority's definition of willful misconduct, that being, "that the actor [affirmatively] desired to bring about the result that followed, *or at least [knew that] it was substantially certain to follow.*" Majority opinion at 1381 (citing *Diaz v. Houck,* 159 Pa.Commonwealth Ct. 274, 283–4, 632 A.2d 1081, 1085 (1993)). (Emphasis added.) However, the majority also states that "willful or malicious failure to guard or warn" is not synonymous with "willful misconduct" because the City did not possess the "desire to harm, kill, or maim". Majority opinion at 1381. In making this conclusion, the majority disregards the fact that a desire to harm is not necessarily required for conduct to rise to the level of willful misconduct. The definition of willful misconduct upon which the majority relies states that as long as the actor knows that harm will most likely follow, the conduct is willful misconduct. In the present case, the evidence supports a conclusion that the City knew of the dangerous conditions of Devil's Pool, and knew that someone would most likely be injured as a result of their failure to guard or warn.

I disagree also because the majority's conclusion that suit against the City is not barred by Section 8542(a) of the Code implies a finding that the City's failure to guard or warn was a "negligent act". Although not defined in the Recreation Act, courts have consistently found the term willful to denote acts "done voluntarily or intentionally or knowingly, as distinguished from accidental." *Jones v. Cheltenham Township,* 117 Pa.Commonwealth Ct. 440, 444–45, 543 A.2d 1258, 1260 (1988) (citing *Rosa v. United States,* 613 F.Supp. 469, 476 (M.D.Pa.1985)). Further, our Court has previously held that the phrase "negligent acts" in Section 8542(a)(2) does not include a willful or malicious failure to act. *See, Jones v. Cheltenham Township,* 117 Pa.Commonwealth Ct. 440, 543 A.2d 1258 (1988); *Zlakowski v. Commonwealth, Department of Transportation,* 154 Pa.Com-

monwealth Ct. 528, 624 A.2d 259 (1993). In addition, the portion of the majority's opinion which equates "willful or malicious failure to guard or warn" with the "willful or wanton injury" standard owing to gratuitous licensees does not support a conclusion that the City's acts were negligent.

> Negligence consists of inattentiveness or inadvertence, whereas wantonness exists where the danger to the plaintiff, though realized, is so recklessly disregarded that, even though there be no actual intent, there is at least a willingness to inflict injury, a conscious indifference to the perpetration of the wrong.

*Kasanovich v. George,* 348 Pa. 199, 203, 34 A.2d 523, 525 (1943).

Based upon the above, I disagree with the majority's conclusion that Section 8542(a) of the Code does not bar suit because the City possessed no "intentional desire to harm, kill, or maim." Accordingly, I would reverse the decision of the trial court and grant the City's motion for judgment n.o.v.

DOYLE, J., joins in this dissent.